[S. F. No. 5794. In Bank.—June 17, 1912.]

MICHAEL HENRY, Respondent, v. DIXON L. PHILLIPS and GEORGE D. ROBERTS, Appellants.

QUIETING TITLE—PLEADING—AMENDED COMPLAINT—NEW ALLEGATIONS OF DETAILS OF DEFENDANTS' CLAIM.—Where the original complaint in an action to quiet title sets forth the cause of action in the usual general terms, an amended complaint which sets forth the plaintiff's title in substantially the same language, but which contains new allegations showing in detail that the defendants' wrongful claims were based upon a fraudulent deed, executed without consideration, which it prays to have declared void, does not state a different cause of action.

ID.—VENDOR AND VENDEE—BONA FIDE PURCHASER—NOTICE OF FRAUD BEFORE FULL PAYMENT OF CONSIDERATION—REPAYMENT OF CONSIDERATION PAID.—The established rule is that the vendee of land who has received a conveyance of the title and has paid a part of the purchase money, but who, before he pays all of it, receives notice of the fact that his vendor obtained the real estate by fraud from the previous owner, is not, under ordinary circumstances, entitled to protection as a *bona fide* purchaser, except to the extent of the money paid by him before receiving such notice, and that the defrauded party can obtain the land from such vendee, but can do so only upon the condition that the vendee is reimbursed what he had paid before notice.

ID.—QUALIFICATIONS OF RULE.—Such rule is not absolute or invariable, but depends upon circumstances and is governed by principles of equity and justice.

ID.—PROVISION FOR REPAYMENT MUST BE MADE IN DECREE.—In an action by the defrauded grantor to recover the land from such a *pro tanto* *bona fide* purchaser, where no other equitable considerations intervene, the decree in favor of the grantor should make provision for the return to the purchaser of the part of the consideration paid by him before he received notice of the fraud, either by making such return a condition precedent to any relief at all, or by declaring a lien therefor on the land.

ID.—EVIDENCE—NOTICE OF FRAUD—WANT OF CONSIDERATION—FINDINGS NOT SUSTAINED.—In an action by a grantor to quiet his title against a claim asserted under a deed alleged to have been fraudulent and given without consideration, brought against the original fraudulent grantee and a subsequent purchaser of an interest in the land who had paid a part of the consideration of his purchase, the evidence is held not to sustain the finding that such subsequent purchaser had any knowledge or notice of any fraud accompanying the execution of such deed, and not to sustain the finding that the fraudulent deed was given without consideration.

ID.—NECESSITY FOR RESTORATION OF CONSIDERATION.—If a consideration were received for the fraudulent deed, the defrauded grantor cannot maintain such action without either restoring it or tendering it to the grantee before the action was begun, or making an offer to do so in his complaint, and in either case the decree should make provision to secure the repayment if restoration was not made before.

ID.—RECONVEYANCE BY GRANTEE—DECREE CANCELING DEED—CONDITIONS ON WHICH RELIEF SHOULD BE GRANTED.—Where a grantee who obtains his deed by fraud has paid a part of the price, and has received no rents or other advantage from his bargain equivalent to what he has paid, he cannot be compelled to reconvey, or to submit to a decree canceling the deed, without requiring repayment to him as a condition of the relief granted, or at least declaring a lien upon the land in his favor for the sum paid by him.

ID.—PROPER FORM OF DECREE.—In such an action, where the evidence shows that the deed, although fraudulent, was given for a consideration, the grantor is not entitled to a positive decree quieting his title against the fraudulent grantee, but only to a decree for a rescission of the contract, requiring repayment of the consideration as a condition thereof, or declaring it a lien on the land, or, what is in substance as equitable, declaring the grantee a trustee and directing a reconveyance concurrently with repayment of the consideration to him.

APPEAL from a judgment of the Superior Court of Fresno County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Dixon L. Phillips, and M. K. Harris, for Appellants.

Frank H. Short, and F. E. Cook, for Respondent.

SHAW, J.—The defendants appeal from the judgment. The evidence is presented in a bill of exceptions.

1. The objection that the court erred in allowing the amended complaint to be filed is not well taken. The claim is made that it states a cause of action different from that set up in the original complaint. The first complaint states a cause of action, in the usual general form, to quiet plaintiff's title to a tract of land. The amended complaint sets forth the plaintiff's title in substantially the same language as in the first complaint, but it further alleges that the defendants' alleged unfounded claims are based on a certain deed executed by Henry to Phillips, and that said deed was void because it was without consideration and was procured by fraud. The facts constituting the fraud are stated at length. There is a specific prayer that said deed be declared void, otherwise the prayer is in substance the same as before. It is practically the same cause of action; the only difference being that the first complaint states the wrongful claim of defendants in general terms, while the second gives the details.

2. The deed from Henry to Phillips was executed on July 22, 1907. The land conveyed is the northwest quarter of section 10, township 20 south, range 15 east, Mt. Diablo meridian, containing one hundred and sixty acres. On July

23, 1907, Phillips conveyed an undivided one-third thereof to Robert S. Rendall, who, on February 12, 1908, conveyed said one-third to the defendant George D. Roberts. Each of these deeds, including that of Phillips, recited a money consideration of ten dollars. The evidence, however, shows without conflict that the consideration of the deed from Phillips to Rendall was five hundred dollars, of which two hundred and fifty dollars was paid at the time and the balance was to be paid on December 1, 1907. Rendall was absent when this deed was made and Roberts, as his agent, paid the two hundred and fifty dollars to Phillips and accepted the deed for Rendall. With respect to the deed from Rendall to Roberts the evidence is to the effect that Roberts merely took the bargain from Rendall as it stood, allowing the two hundred and fifty dollars which he had advanced for Rendall to stand as a payment by him to Rendall, and assumed the payment of the remaining two hundred and fifty dollars due from Rendall to Phillips. This balance still remains unpaid.

There is no evidence that either Rendall or Roberts had knowledge or notice of the negotiations between Henry and Phillips or of any fraud claimed to have been practiced by Phillips in obtaining the deed from Henry. On the contrary the testimony of Roberts shows that he had no knowledge thereof. The court finds that Roberts took the deed from Rendall with full knowledge of the facts constituting the fraud. This finding has no support in the evidence.

From the evidence and from the other findings in the case it is a fair inference that the finding just referred to was made by the court as its theory of the legal effect of other facts stated in the other findings, upon which facts it based a conclusion that Roberts and Rendall were chargeable with knowledge of fraud. These findings are that Phillips and Roberts "acted in conjunction in the matter of said transaction with the plaintiff in connection with the deeds to said land, and the said transaction with relation thereto as herein found, and at said time the said Roberts was acting for the said Robert S. Rendall, and in the said transaction in connection with which, said Roberts received the said deed from the said plaintiff (defendant Phillips) to the said Rendall, the said Roberts was counseling and advising with said Phillips as to the value of said land and the transactions concern-

ing the same, and it was understood and arranged between the said Phillips and the said Roberts acting for the said Rendall, that if the said Phillips purchased and acquired said land, that he, the said Phillips, was to convey to the said Rendall, acting through the said Roberts, for a consideration of five hundred dollars, an undivided one-third interest in and to said land, and the said defendants were acting together in the said transaction, and were jointly interested therein, and each of the said defendants is charged with notice of all of the acts and transactions of the other, and of all of the communications or notices received by either of them.'' Other findings show that Rendall was in Los Angeles and had no part, personally, in any of the transactions.

There is no substantial evidence of any joint interest, or of any agreement, plan, or scheme that Phillips should obtain the land for the joint benefit of himself and Roberts or Rendall, or in order that he might convey one-third to Rendall, or that Phillips and Roberts ''acted in conjunction'' in the affair with Henry, or that it was ''understood and arranged'' that if Phillips bought the land of Henry he should convey one-third to Rendall. Roberts testified that he was familiar with the oil business in that vicinity, that Rendall was his brother-in-law, that Rendall told him (apparently prior to the Henry deed though it is not directly stated), that he, Rendall, could buy a one-third interest in the Henry land from Phillips for five hundred dollars, and asked as to its value, that he then advised Rendall that the land was worth nothing unless it was oil land and that on the chance that it might be oil land it was worth that sum as a kind of gamble, that he, Rendall, was obliged to go away, and he then authorized and requested Roberts to close the deal with Phillips, that he, Roberts, did so, and at the time paid Phillips two hundred and fifty dollars for Rendall on the price. Phillips testified that he understood that Roberts was representing Rendall, and after he obtained Henry's deed for the land, and on the same day, he telephoned from Hanford to Roberts, who was at Coalinga to meet him in Fresno on the following day, that they met in Hanford the next day and went together to Fresno, where Phillips searched the public records and found the title satisfactory, that Roberts then said that Rendall wanted to buy a third interest, and would

pay five hundred dollars for it, that thereupon he accepted the offer and at that time, being in the recorder's office, he drew up the Rendall deed, signed and acknowledged it and delivered it to Roberts and that Roberts paid two hundred and fifty dollars on the price. He also testified that after the execution of the deed from Rendall to Roberts, Roberts told him that Rendall had gone to South America, and had asked Roberts to take this one-third interest off his hands, whereupon Rendall and his wife had conveyed the same to Roberts. There was no other evidence on this branch of the case.

No joint interest is here shown. No writing or other binding agreement concerning the one-third interest is even suggested by the testimony. No consideration had passed for any such agreement and there is no proof that there had been anything looking toward an agreement between Phillips and Rendall or Roberts concerning this land other than a mere proposal or statement by Rendall to Phillips that if Phillips got the land that he, Rendall, would give him five hundred dollars for a one-third interest in it. Neither party was bound either in law or equity and there is nothing to warrant a conclusion that Rendall, in order that he might secure the one-third interest, had delegated or requested Phillips to buy the land from Henry for that purpose, even by fair means, much less by deceit or fraud. There is nothing which makes Phillips the agent of Rendall or Roberts or which makes either of them responsible for any fraud which may have been practiced by Phillips upon Henry to procure Henry's deed. The judgment declares that the deeds from Phillips to Rendall and that from Rendall to Roberts are null and void and that Roberts has no right, title, or interest in the land. It makes no provision for the return of the two hundred and fifty dollars paid by Roberts for Rendall to Phillips and afterward adjusted by him with Rendall, and it gives Roberts no lien or claim on Henry or on the land therefor.

The established rule is that the vendee of real estate who has received a conveyance of the title and has paid a part of the purchase money, but who, before he pays all of it, receives notice of the fact that his vendor obtained the real estate by fraud from the previous owner, is not, under ordi-

nary circumstances, entitled to protection as a *bona fide* pur-
chaser, except to the extent of the money paid by him before
receiving such notice, and that the defrauded party can
obtain the land from such vendee, but that he can do so only
upon the condition that the vendee is reimbursed what he
had paid before notice. The following authorities support
this view: *Lewis* v. *Phillips,* 17 Ind. 113, [79 Am. Dec. 457] ;
*Rhodes* v. *Green,* 36 Ind. 10; *Burton* v. *Reagan,* 75 Ind. 81;
*Clift* v. *Nay,* 105 Ind. 356, [5 N. E. 1] ; *Baldwin* v. *Sager,* 70
Ill. 503; *Webb* v. *Bailey,* 41 W. Va. 469, [23 S. E. 644] ; *Grant*
v. *Martin,* 3 Serg. & R. (Pa.) 428, 432; *Lewis* v. *Bradford,* 10
Watts, (Pa.) 82; *Kitteridge* v. *Chapman,* 36 Iowa, 348; *War-
ner* v. *Whittaker,* 6 Mich. 132, [72 Am. Dec. 65] ; *Digby* v.
*Jones,* 67 Mo. 104; *Hardin* v. *Harrington,* 74 Ky. 374; *Davis*
v. *Ward,* 109 Cal. 191, [50 Am. St. Rep. 29, 41 Pac. 1010] ;
2 Warvelle on Vendors, sec. 610; 2 Pomeroy's Equity Juris-
prudence, secs. 750, 755. Many others to the same effect might
be cited. The rule is not absolute or invariable, but depends
upon circumstances and is governed by principles of equity
and justice. For example, where the price was one thousand
dollars and only one dollar had been paid, it was said that
the payment was merely nominal and that the vendee had
no standing as an innocent purchaser for value if he received
notice before paying more. (*Kitteridge* v. *Chapman, su-
pra.*) In other cases, where a very small part of the price
was unpaid when notice was received, or where the defrauded
party was negligent to the prejudice of the purchaser, or
where, from the fact of improvements made in good faith,
or other conditions, it would be a great hardship upon the
vendee to take the land from him, it is said that he should
be allowed to retain the land and the defrauded party lim-
ited to the recovery of the part of the purchase money still
owing by such vendee. (*Haughwout* v. *Murphy,* 22 N. J.
Eq. 548; *Frost* v. *Beekman,* 1 Johns. Ch. (N. Y.) 300; *Flagg*
v. *Mann,* 2 Sumn. 563, [Fed. Cas. No. 4847].) None of these
conditions exist here. Roberts therefore is only entitled to
the return of the amount paid by him to Phillips on the pur-
chase price of the one-third interest sold by Phillips to
Rendall. The decree should at least have made provision
therefor, either by making such return a condition precedent
to any relief at all, or by declaring a lien therefor on the

undivided one-third of the land in favor of Roberts against Henry. Whether the decree is supportable against attack on other grounds remains to be considered.

3. The decree is not in accordance with the case stated in the complaint and it is not in all respects supported by the evidence. As we have hereinbefore shown, the amended complaint, in effect, states a cause of action to quiet title, differing from the usual form in that it states the details of the defendants' claim and the facts to show that it is invalid. It does not purport to seek a rescission and it does not show that Phillips had paid Henry any money on account of their dealings concerning the land. On the contrary, it alleges that the deed from Henry to Phillips was wholly without consideration. It proceeds entirely upon the theory that a deed obtained by fraud without any consideration, is wholly void between the parties and others with notice, whenever the fraud is shown in a proper case.

The decree adjudges that the respective deeds of Henry to Phillips, Phillips to Rendall, and Rendall to Roberts are void, that defendants have no right, title, claim, or interest in or to the land, or any part thereof, that the plaintiff is the owner thereof in fee, that his title thereto be quieted and that the defendants be forever enjoined from claiming or asserting any right, title, or interest in or to the same. It further orders and adjudges that Henry pay to Phillips the sum of two hundred and fifty-five dollars. It does not declare this sum a lien upon the land, nor make the relief awarded to Henry conditional upon such payment.

There is no foundation in the complaint for this provision in favor of Phillips. The answer of Phillips denies the allegation of the complaint that the deed of Henry was without consideration. It alleges that two hundred and forty-five dollars of the consideration still remains unpaid, that Phillips is ready, able, and willing to pay it and makes tender of it, but it does not state what was the price agreed on or that any money had been paid thereon. The court made a finding that a few days after the execution of the Henry deed, Phillips paid to Henry two hundred and fifty dollars, and later five dollars, which Henry received in the belief that it was an advance payment upon a sale of the land at two hundred and fifty dollars an acre made by Phillips for Henry

to some third person not named. The judgment for the pay-
ment of this two hundred and fifty-five dollars would seem to
be based upon this finding.

Such a decree cannot be sustained except upon the theory
that the contract between Phillips and Henry, whatever its
nature, was without consideration and, consequently, that no
restoration, or offer to restore, from Henry to Phillips, nor
any provision securing restoration, was necessary. If a con-
sideration was received by Henry, he could not maintain the
action without either restoring it or tendering it to Phillips
before the action was begun, or making an offer to do so in
his complaint, and in either case the decree should make pro-
vision to secure the repayment if restoration was not made
before. There are some cases which hold that a prior re-
scission or offer to rescind and restore, is not always essen-
tial, that, under some circumstances, as where some reasonable
excuse for not sooner restoring or offering to restore the con-
sideration is shown, relief may be granted notwithstanding
the failure to make a previous offer to restore, and the decree
may declare the party guilty of fraud a trustee for the
plaintiff and direct a reconveyance upon terms which will be
just and equitable to both parties. *More* v. *More,* 133 Cal.
493, [65 Pac. 1044, 66 Pac. 76], is an example of this class
of cases. But in that case a good excuse for not making the
prior offer was shown, and the court below had adjudged a
reconveyance only upon the condition that the money paid
by the guilty party be concurrently restored to him. It was
because of these provisions that the judgment was approved.
We know of no authority for the proposition that where a
grantee who obtains his deed by fraud has paid a part of
the price, and has received no rents or other advantage from
his bargain equivalent to what he has paid, he can be com-
pelled to reconvey, or to submit to a decree canceling his
deed, without requiring repayment to him as a condition to
the relief granted, or at least declaring a lien upon the land
in his favor for the sum paid by him. The decree that the
deeds are void, therefore, depends upon the accuracy of the
finding that there was no consideration paid by Phillips.

The evidence on this subject consists entirely of the testi-
mony of Phillips and Henry. That of Phillips showed that
the transaction was a *bona fide* sale and conveyance of the

land by Henry to him for five hundred. dollars, of which two hundred and fifty-five dollars had been paid. Henry's testimony is rambling, confused, and somewhat inconsistent with itself. It can be deemed veracious in intent only upon the theory that his recollection of the transaction is not good. The complaint avers that he understood and believed that the paper he signed was not, an agreement or option to buy the land, but a mere power of attorney authorizing Phillips to sell the land as his agent. This allegation is not sustained by any evidence. Henry testified as follows: "I considered it was an option he had fixed up. . . . I thought as long as it was an option and would get me all the money out of this land I wanted, I thought I would let him handle it, I thought that was good enough to get. He didn't say whether it was a hundred dollars an acre or a thousand dollars; nothing said about it." Being asked if any papers were read to him, he replied: "He read one, but I don't know how he did read it, I couldn't tell that, whether he called it a deed or an option, I couldn't tell which way he read it. Q. How did you understand it? A. I understood he was making out a deed to sell the land. Q. Would you know the difference between a deed and an agreement for a deed? A. Well, I don't know as I would." On cross-examination the following occurred: "Q. And did you know what the paper was? A. Well, I understood by my attorney that he was making out a deed to sell this land. Q. Making out a deed to sell it? A. An option. Q. Which do you mean, a deed or an option? A. An option. I understood he was making out an option and he got a deed made out. . . . Q. Well, the paper you signed, who did you understand that deed or option, or whatever you thought it was, was made to? A. He made it out to himself. He didn't tell me about anybody else. Q. You understood at that time that this paper was from you to Phillips? A. Yes, sir."

In regard to the payment of two hundred and fifty-five dollars, Phillips testified that, after recording the Henry deed at Fresno, he returned to Hanford on July 24th, and there paid Henry two hundred and fifty dollars as part of the price of the land, that Henry asked him to keep the two hundred and fifty dollars for him as a custodian and pay it out to or for him in small sums as he wanted it; that he assented to

this arrangement and drew up a statement. in duplicate, which they both signed, one of which Henry kept. This statement declared that Henry had deposited with Phillips two hundred and fifty dollars on account of the purchase price of the land, describing it, that Henry had received said sum·from Phillips, that Henry could draw said deposited money from time to time as he desired it, and that the reason for making this deposit with Phillips was because of the reckless manner in which said Henry handles his money, especially when he is drinking. This instrument was signed in duplicate by both parties and its execution is admitted, as also is the delivery of the duplicate copy to Henry. The money so deposited was paid over by Phillips to Henry thereafter in small sums, the last payment, $119.95, being paid on September 10, 1907. The additional five dollars was paid on February 11, 1909. Henry made no denial of the payment of this money in the manner stated, nor of the reason therefor as stated in the writing aforesaid. His testimony, as to the payment, was that Phillips returned to Hanford and reported to him that he had made a sale of the land to some one, whose name Phillips did not give, at two hundred and fifty dollars an acre, that the purchase money would be paid in full within thirty days, that Henry would then get all of his money, and that this two hundred and fifty dollars was given to him, Henry, as an advance payment on said sale.

It is clear that this evidence does not support a finding that Henry was informed or believed that the paper he signed was a mere authorization to Phillips to sell the land for him as his agent, or a finding that it was in fact of that character. Disregarding Phillips's testimony, that of Henry shows that he underst. ;d that he was signing either an agreement to sell the land to Phillips, or an agreement giving Phillips an option to buy it from him. The paper of July 24th, the execution of which he admits, shows that the two hundred and fifty dollars was paid to him as part of the consideration for the land sold by him to Phillips. His testimony contains no denial of this fact. The finding that there was no consideration was therefore contrary to the evidence. The evidence is· conflicting in this, that one. party says the sale was evidenced by a deed, while the other understood, or at least says he understood, that it was evidenced by an ex-

ecutory agreement. In either case it would be necessary, as a condition to granting Henry any relief, to make adequate provision securing the return to Phillips of the money he paid to Henry. The case made by the evidence does not authorize a positive decree quieting plaintiff's title, but only a decree for the rescission of the contract, requiring repayment of the two hundred and fifty dollars as a condition thereof, or declaring it a lien on the land, or, what is in substance as equitable, declaring Phillips a trustee and directing a reconveyance concurrently with repayment of said sum to him. To this extent, there is a material variance between the pleadings and the proof. The judgment given is not warranted by the pleadings, the findings in some particulars are outside of the issues, and neither the complaint nor the findings are in entire harmony with the evidence.

This makes a reversal necessary. A large portion of the appellants' brief is devoted to a consideration of the relative credibility of the plaintiff and defendant Phillips. This is a question which must be determined by the trial court. We cannot enter upon a discussion of it.

The judgment is reversed.

Angellotti, J., Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.