[L. A. No. 8465. In Bank.—September 23, 1929.]

TITLE GUARANTEE AND TRUST COMPANY (a Corporation), Appellant, v. FRANCIS W. HENRY et al., Respondents.

E. W. Sargent, E. J. Vaughan, G. B. Colby, Tanner, O'Dell & Taft, O'Melveny, Tuller & Myers and Homer I. Mitchell for Appellant.

I. Henry Harris and T. E. Davis for Respondents.

PRESTON, J.—The judgment is reversed. Enough of the facts and the principles applicable thereto to show the propriety of this conclusion will now be set forth.

Plaintiff sued defendants to cancel a certain outstanding instrument, purporting to be a contract of sale and purchase, made by it with defendant Henry under date of February 1, 1923, affecting the title to certain lots in Los Angeles known as Nos. 188 and 189 of tract 2189 of Pellissier Square, as per the official map thereof. The complaint was in two counts, the first in the ordinary form of an action to quiet title and the second attaching specifically said written instrument alleging that it was never executed and delivered, the material allegations upon which the prayer for cancellation was based being as follows:

"That on or about February 5, 1923, the defendant Emma Summers was proposing to purchase the above described real estate and to place the same in the name of Francis W. Henry, above mentioned as a defendant, for the sum of $27,500.00, on terms and conditions to be contained in a written contract and to be approved by one Marie Julie Pellissier. That plaintiff caused to be prepared contracts for the sale of said real estate in duplicate, a copy of which is hereto annexed marked Exhibit 'A,' and had signed the same, but said contracts were not complete or ready for delivery and had not been approved by said Marie Julie Pellissier. That on or about said date the defendant Emma Summers had deposited with plaintiff checks in the sum of $2,500.00, which said checks would be accepted and applied on account of said contract as soon as said contract should be ready for delivery. . . . That said defendant Emma Summers surreptitiously and without the knowledge or consent of the plaintiff or its said employee took one of said duplicate copies of said alleged contract and departed from the office, and is now claiming that said contract was delivered to her."

Defendants answered, putting in issue all the material allegations of the complaint, including specifically a denial of ownership of the property by plaintiff. Defendant Henry at the same time interposed a cross-complaint wherein he set up said contract and alleged performance on his part and his further readiness, willingness and ability to perform each and every term thereof, repudiation and refusal to carry out the terms thereof by plaintiff, adequacy of the purchase price; that said contract was in all respects just and reasonable and that plaintiff's assent thereto was not obtained by misrepresentation, concealment, circumvention or unfair practices of any kind and that defendant Henry had fully and fairly performed all conditions precedent on his part to the obligations of plaintiff, wherefore he prayed that he have specific performance of said contract decreed, and a conveyance of said property directed to him upon compliance with the terms and conditions mentioned therein. But there was no allegation in said cross-complaint that plaintiff owned any estate, right, title or interest in or to said property nor indeed that plaintiff as a grantor was in possession thereof.

To this cross-complaint plaintiff answered denying execution of said written instrument, denying that defendant Henry paid it the sum of $2,500, but admitting that checks were left with it in that sum, which checks were not accepted or cashed, and specifically pleading, in accordance with the second count of its complaint, that said instrument was never delivered at any time to defendant Henry or his co-defendant, but was surreptitiously and unlawfully taken from its possession without its consent.

The court made findings and gave judgment denying relief to plaintiff and decreed to defendant Henry the relief prayed for by him, including specific adjudication of the due execution and delivery of said written instrument, performance thereof so far as required on the part of said Henry, payment by him of said sum of $2,500 and his willingness and ability to complete the contract in accordance with its terms and repudiation thereof by plaintiff. The court also found that plaintiff owned the property in fee simple; that it was not necessary that said contract of purchase be approved by said Marie Pellissier and that in truth and fact the document was delivered to said defendant Henry.

Many claims are put forth by appellant as grounds for reversal of this action, chief among which are that under the evidence offered, including the documentary evidence rejected, it became the duty of defendant Henry, as a cross-complainant, and of the court, inasmuch as he failed to do so, to make Marie Julie Pellissier a party to this action before entering a decree of specific performance; that in this connection the court erred particularly in refusing to admit in evidence the terms of the trust under which the legal title to the property in question was held by plaintiff, the contention being that said trust instrument on its face showed that plaintiff held only the naked legal title to said property whereas the equitable and real title was in the said Marie Julie Pellissier. These two contentions only need receive our attention.

At the opening of the trial of said cause, plaintiff offered in evidence said instrument referred to, being a declaration of trust made on the twenty-fifth day of February, 1913, setting forth the terms upon which said property was conveyed to and held by it, said Marie Julie Pellissier being

the beneficiary thereunder. Said instrument, among other provisions, contained the following: " . . . party of the second part (plaintiff) shall issue Contracts of Sale and convey lots . . . to such person or persons, at such prices, and upon such terms as it shall be hereinafter instructed by the said party of the first part, her heirs or assigns." Further: "The party of the second part shall impose such restrictions, covenants and conditions in all Agreements and deeds executed by it as it shall be in writing requested to do by said party of the first part, her heirs or assigns."

It was stipulated in open court by both parties that said Marie Julie Pellissier did not consent to the execution or delivery of the contract of purchase in question. It was further announced by the court several times during the trial that plaintiff was merely the holder of the legal title and that the full equitable title was in the said Pellissier. It was also testified to by several witnesses that no sales of any kind were made without first securing the consent of said equitable owner.

Under the situation it is manifest that the finding by the court that plaintiff was the owner in fee simple of the property in suit cannot stand. It should also be noted that the cross-complaint contained no allegation of ownership or estate or possession in the plaintiff. On the contrary, the answer to the cross-complaint denied that plaintiff was the owner thereof. It is true that at the trial permission was granted to said defendant to withdraw that portion of his answer in this respect, but the defect in the cross-complaint was never supplied by any allegation or proof that plaintiff held any estate whatsoever in or possession of said lands.

Under the terms of the declaration of trust as it appears in the record, it would have been a breach of duty on the part of the trustee and a direct violation of the terms thereof for it to have executed the contract in question without consent of the real owner, Marie Pellissier. Had the declaration of trust been admitted in evidence it would have clearly followed that Marie Pellissier was an indispensable party to the determination of the issues in said action. A conveyance in violation of the terms of the trust would not have been an act by the trustee in the exercise of its powers but would have been an act in defiance of the restric-

tions upon it. The principle announced in the case of *Mitau* v. *Roddan,* 149 Cal. 1 [6 L. R. A. (N. S.) 275, 84 Pac. 145], is here applicable because the situation here is but the converse of the situation there. See, also, the recent case of *Lake* v. *Dowd,* 207 Cal. 290 [277 Pac. 1047].

Defendant Henry is doubtless desirous of coming within the operation of that portion of said declaration of trust which reads as follows: "Any conveyance made by the Title Guarantee and Trust Company to the purchasers of Lots shall vest in such purchasers an absolute and unassailable title, and there shall be no obligation on the part of the purchasers to see to the application of the purchase money, it being expressly understood by all parties hereto that any conveyance made by the party of the second part shall be binding upon all parties hereto, and should the party of the second part violate any of the provisions hereof, then the Beneficiary shall have recourse only against said party of the second part."

The waiver of certain rights for a violation of the trust does not argue the trustee is acting within the line of his authority. If plaintiff is forced to convey, the said Marie Julie Pellissier will be forced to accept such action and will be relegated to a cause of action against the trustee personally. This is an added and convincing reason why she is a necessary party to this action. It has been well said in *O'Connor* v. *Irvine,* 74 Cal. 435 [16 Pac. 236, 239]: "If the necessary parties to a full determination are not before the court, it is the duty of the court, on its own motion, to order them brought in; and this, although the defendants in the action have omitted to raise an objection of defect of parties by demurrer or answer. The failure of the court so to do is fatal to the judgment." (See *Mitau* v. *Roddan, supra,* and *Lake* v. *Dowd, supra.*)

Defendant invokes section 869 of the Civil Code, which reads as follows: "Where an express trust is created in relation to real property, but is not contained or declared in the grant to the trustee, or in an instrument signed by him, and recorded in the same office with the grant to the trustee, such grant must be deemed absolute in favor of purchasers from such trustee without notice, and for a valuable consideration." The contract here in question is an executory contract and the cross-complainant could not

under the evidence be interested as a purchaser without notice for a valuable consideration beyond the initial payment made by him at the inception of the transaction. (*Davis* v. *Ward,* 109 Cal. 186 [50 Am. St. Rep. 29, 41 Pac. 1010]; *Henry* v. *Phillips,* 163 Cal. 135, 140 [Ann. Cas. 1914A, 39, 124 Pac. 837].) This observation brings to the foreground the absence of any allegation or proof that cross-complainant was an innocent purchaser for value.

The rule is stated in *Kenniff* v. *Caulfield,* 140 Cal. 34, 45 [73 Pac. 803, 806]; as follows: "To entitle a party to protection as such a purchaser, he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, actual or constructive, prior to and down to the time of its payment, for, if he had notice, actual or constructive, at any moment of time before the payment of the money, he is not a *bona fide* purchaser. (*Eversdon* v. *Mayhew,* 65 Cal. 167 [3 Pac. 641]; *Davis* v. *Ward,* 109 Cal. 190 [50 Am. St. Rep. 29, 41 Pac. 1010]; *County Bank of San Luis Obispo* v. *Fox,* 119 Cal. 64 [51 Pac. 11].)"

Said declaration of trust was admissible in evidence upon another theory. A seller cannot be required to specifically perform in a case where he is entirely without power so to do, as for example, where he has no estate of any kind or character in the property the subject of the action. Here had said document been introduced in evidence in connection with other testimony, it might easily have been determined that plaintiff was without any real interest in said property and the decree of specific performance would only have had the effect of clouding the title of said Marie Pellissier. (*Smith* v. *Bangham,* 156 Cal. 359, 364 [28 L. R. A. (N. S.) 522, 104 Pac. 689]; *Bell* v. *Bank of California,* 153 Cal. 234, 239 [94 Pac. 889]; *Farnum* v. *Clarke,* 148 Cal. 610, 618 [84 Pac. 166].)

It is also true that the reception by the court of this declaration of trust in evidence might have had a bearing upon the finding as to whether or not delivery was actually made to cross-complainant of said contract, there being sufficient evidence in the record for at least an investigation of the question as to whether or not the cross-complainant knew at all times that Marie Pellissier was the real owner

and in charge of the disposition of said property and that a sale could not be made without her consent.

There is no merit in the contention that because plaintiff in its original complaint alleged itself to be the owner of this property, cross-complainant would not be required to make Mrs. Pellissier a party to the action. The answer to that claim is pointed out in the cases of *Mitau* v. *Roddan, supra,* and *Lake* v. *Dowd, supra,* because by such action plaintiff was not acting in violation of its trust but in consonance with its powers thereunder. (See, also, *Solomon* v. *Redona,* 52 Cal. App. 300 [198 Pac. 643].)

It should be noted that we are not measuring here the rights defendants might have against the trustee as an individual, but we are declaring that under the showing made specific performance should not be decreed without the presence of Marie Pellissier as a party to the action.

We think the subject need not be pursued further.

Shenk, J., Waste, C. J., Curtis, J., Langdon, J., Seawell, J., and Richards, J., concurred.