[Civ. No. 602. Fourth Appellate District.—August 5, 1932.]

CHESTER BROOKS WOOD et al., Minors, etc., Appellants, v. AMERICAN NATIONAL BANK (a Banking Corporation) et al., Respondents.

Charles Bagg for Appellants.

David W. Richards and Donald Plympton Mayhew for Respondents.

JENNINGS, J.—This action was instituted by the plaintiffs, Chester Brooks Wood and Carolyn Lyde Wood, minor children of Letta Wood, deceased, through their duly appointed guardian *ad litem*, to have certain instruments affecting the title to real property in the county of San Bernardino declared void and canceled. From a judgment denying to them the relief sought plaintiffs have prosecuted this appeal.

The record herein presents the following facts: On March 16, 1925, the real property, the title to which was affected by the instruments alleged by plaintiffs to be void, was conveyed by grant deed to the defendant Bess Brooks. This deed was absolute on its face and conveyed title in fee to the grantee named therein. On the same day Bess Brooks executed an instrument wherein she certified that the real property which had been conveyed to her was in fact the property of her sister, Letta Wood, and that she held title thereto in trust for her said sister and would upon her request execute a deed to the property as she might direct. On March 9, 1925, a letter was written by Mrs. C. G. Wood, who is shown by the record to be the same person as Letta

Wood, addressed to R. D. McCook, president of the American National Bank in San Bernardino. That portion of the letter which is of importance to the questions herein involved is in the following language:

"Your letter rec'd today. Thanks very much for being so prompt in making payments on this property of mine. So I told you over the phone this property was given me by my father to be kept always as a home and I want to follow out his wishes & I know it would be my father's wish that if I do not recover that this property should be kept intact until my children are grown.

"I realize that Mr. Wood drinks quite heavily and so is not responsible.

"Yes, I would like to follow your suggestion and have the property deeded to her my sister as Trustee.

"If anything happens I do not recover would like the property held in trust for my daughter Carolyn when she becomes of age. If you will phone my sister she will place the $20. at your disposal.

"Unless my sister is appointed trustee, I realize my son & daughter would never have the benefit of this property should anything happen I don't recover. Especially since you advised me that Mr. Wood wished $1000.00 placed to his credit. You know a man who drinks is not responsible."

On March 16, 1925, R. D. McCook signed a letter which was addressed to Mrs. C. G. Wood. That part of the communication important to be here noted reads as follows:

"We have prepared Deed for signature of W. E. Daimwood and wife to the home property here, deeding it to your sister Bess Brooks. Your sister has executed a Declaration of Trust which I inclose herewith. This declaration is evidence, as you will note, that the property is actually yours, held in her in trust only. Will say that I have had her sign this in duplicate and we have another copy of same here, which I am attaching to the copy of this letter and which will be filed in our regular letter file for use in case you should lose or mislay your copy.

"It will be impossible to deed or mortgage this property now without the signature of your sister."

Letta Wood died March 21, 1926. On April 6, 1926, Bess Brooks executed a trust deed conveying the property

which is the subject of the present controversy to the defendant American National Bank in trust to secure the payment of a promissory note for $2,200, executed by Bess Brooks on the same date in favor of said bank. On April 12, 1927, Bess Brooks executed a grant deed conveying title to the said property to the American National Bank. This deed recited that title to the property was conveyed to the bank subject to the trust deed theretofore executed in favor of the bank. On the same date on which the grant deed was executed an instrument entitled ''Declaration of Trust'' was executed by the American National Bank of San Bernardino. This instrument recites the conveyance of the property to the bank by a deed absolute in form executed by Bess Brooks, denominated the Trustor; that no consideration was paid by the bank for the conveyance, but that it was accepted and will be held upon the trust, terms and conditions and for the purposes specified in the declaration of trust until such time as the beneficiaries named therein shall have attained the age of twenty-one years. The beneficiaries designated in the instrument are the two minor children of Letta Wood. It is stated in the declaration that it is understood and agreed between the trustee and trustor that, prior to the conveyance of the property by the trustor to the trustee, the trustor had no legal, equitable or beneficial interest in the property, but that she held legal title thereto as trustee for the sole benefit of the beneficiaries named in the declaration. It is provided that the trustee bank may at any time, either upon written order of the trustor or, when in the judgment of the trustee, it appears advantageous to the trust estate, sell and dispose of the property holding the proceeds therefrom in trust for the sole benefit of the beneficiaries. It is further provided that the trust shall cease when the younger of the two beneficiaries attains the age of twenty-one years. Appended to this declaration is a certificate signed by Bess Brooks wherein she certifies that she is the person named in the instrument as trustor and that the declaration of trust fully and correctly states the terms and trust under which the property is to be held, managed and disposed of by the trustee and that she consents to, approves, ratifies and confirms the same in all particulars. At some time subsequent to the execution of the grant deed to the defendant bank and the execution of the above-

described "Declaration of Trust" the bank entered into a contract with the defendant Robert H. Emery by which the bank agreed that, upon the payment by him or his assigns of a specified sum of money, it would execute a deed conveying the property to said purchaser. Thereupon the purchaser under this contract took possession of the property.

The question whether the respondent, Bess Brooks, was authorized to execute the trust deed and the grant deed to respondent bank depends ultimately upon an analysis of the letter of March 9, 1925, written by Letta Wood addressed to the president of respondent bank. This communication constituted the only evidence before the court which shed any light upon the intention of the owner of the property regarding the nature and terms of the trust which she desired to create with respect to her real property. The interpretation of this letter therefore furnishes the only key to the solution of the problem here presented (*Title Ins. & Trust Co.* v. *Duffill*, 191 Cal. 629, 642 [218 Pac. 14]). The first paragraph of the letter states that the property had been given to the writer by her father "to be kept always as a home", that it is her desire to follow out his wishes and that she knows it would be her father's wish that, if she should not recover, the property "should be kept intact" until her children are grown. In the third paragraph the writer states that she would like to have the property deeded to her sister, as trustee. She further declares in the fourth paragraph that, if she should not recover, she would like to have the property held in trust for her daughter, Carolyn, when she becomes of age. The fifth paragraph contains the following statement: "Unless my sister is appointed trustee, I realize my son & daughter would never have the benefit of this property should anything happen I don't recover." The remainder of this paragraph and the single sentence which constitutes the second paragraph indicate clearly the reason for the writer's anxiety concerning the property. She here adverts to the fact that her husband drinks heavily and is therefore not responsible. It thus clearly appears from the language of the letter that it was the desire and intention of the settlor that the property should be preserved as a home for her children until the daughter, who appears to be the younger of the two children, should become of age and to carry this intention into

effect she desired that her property be deeded to her sister as trustee and that it be held in trust for the two children. It is true that she states that she wishes the property held in trust for the daughter alone, but other language contained in the letter and its general scope and purpose indicate that it was the desire and intention of the writer that the property be held in trust for both children. The clearly expressed statement that, if she should not recover, she knows that it would be her father's wish that the property, which had been given to her to be kept always as a home, should be kept intact until the children are grown and that she desires to fulfill his wishes does not warrant the contention of respondents that it was the intention of the settlor that the property be sold and the proceeds be preserved for the beneficiaries. It may well be that greater benefit would be derived by the beneficiaries should this interpretation be adopted. But the language employed by the settlor so clearly evidences her desire that the property shall be preserved as a home until the younger child has become of age that strained effort would be required in order that the interpretation contended for by respondents should be adopted. ■ Furthermore, it is the rule that if there be any doubt or uncertainty in the language of the trust it will be construed, if possible, in favor of the beneficiary and against the trustee. (*Title Ins. & Trust Co.* v. *Duffill*, *supra; Ringrose* v. *Gleadall*, 17 Cal. App. 664, 667. [121 Pac. 407].) It is to be remembered, also, that the grantee in the deed from the Daimwoods, dated March 16, 1925, the respondent herein, Bess Brooks, on the same day on which the deed conveying title in fee to her was made, executed an instrument wherein she declared that the property deeded to her by the Daimwoods is in fact the property of her sister, Letta Wood, that she holds title to the property in trust for her, and will upon her request execute a deed thereto as she may direct. Herein is contained no intimation or suggestion that the person who thus admits that she holds title merely as trustee considered that she had any authority to do anything with the property other than to execute a deed to it as her sister might direct. It is significant that, although Letta Wood lived for a year after the deed conveying title was executed she gave no directions, so far as appears, to her sister, Bess Brooks, to execute a deed to the

property to anyone. It thus appears that neither in the letter in which the settlor expressed her desire for the creation of the trust, its duration, its object and the beneficiaries for whom she desired its creation nor in the instrument by which the trustee declared that she held title to the property in trust is to be found any authority given directly or by implication to the trustee to convey the property. ▮
In the absence of such authority the duty was imposed upon the trustee to keep the property and to deliver it to the designated beneficiaries upon the termination of the trust (*Goad* v. *Montgomery,* 119 Cal. 552, 560 [63 Am. St. Rep. 145, 51 Pac. 681] ; *Huntoon* v. *Southern T. & C. Bank,* 107 Cal. App. 121 [290 Pac. 86] ). Unless, therefore, the conveyance by the trustee, Bess Brooks, to the respondent bank is protected by statute it would seem to follow logically that it was void and that the judgment refusing so to declare it is incorrect. It is contended by respondents and was evidently the opinion of the trial court that the situation thus presented is covered by the provisions of section 869a of the Civil Code. This contention will receive consideration in a later part of the opinion herein.

▮ Appellants urge that the trust deed executed by respondent, Bess Brooks, on April 6, 1926, in favor of the respondent bank to secure the payment of the promissory note for $2,200 is likewise void as an unauthorized act on the part of the trustee, Bess Brooks. In this connection, it is said that the trust under which the trustee held title to the property is a dry, passive trust requiring the performance of no active duty by the trustee who was the mere depositary of the naked title charged with no duty and without power to take possession or manage or exercise any control over the property. But again seeking to discover the settlor's intention in this regard as it may be derived from an interpretation of her letter of March 9, 1925, addressed to the president of the respondent bank it appears that she undoubtedly desired that the property should be preserved as a home for her children and therefore because of her expressed belief of her husband's irresponsibility desired that title be conveyed to her sister as trustee for the children. Manifestly, her desire for the preservation of the property as a home for her children might be effectually and rapidly thwarted by the involuntary imposi-

tion of liens against the property for various charges, e. g., tax liens. When it is remembered that at the time the letter of March 9, 1925, was written the daughter of Letta Wood was but five years and two months of age and her clearly expressed desire and intention was that the trust should continue until this child should attain her majority, it is apparent that, in order to carry into effect the settlor's desire that the property be preserved as a home, something more than mere passive holding of title by Bess Brooks would be required. Preservation imports some degree of activity. Preservation of property particularly for the specific pupose of providing a home implies care and management. ▇ Therefore, although the execution of the trust deed by the trustee was not authorized by the letter of the settlor from whose interpretation we deduce her intentions respecting the nature and objects of the trust, it is nevertheless the rule that a trustee has "authority to adopt measures and to do acts which, though not specified in the instrument, are implied in its general directions, and are reasonable and proper means for making it effectual" (2 Pomeroy's Equity Jurisprudence, sec. 1062; *Gilbert* v. *Penfield*, 124 Cal. 234, 238 [56 Pac. 1107]; *Kipp* v. *O'Melveny*, 2 Cal. App. 142, 144 [83 Pac. 264]). ▇ We are then of the opinion that upon proper showing by the trustee, Bess Brooks, of the necessity of borrowing money to discharge valid claims and liens against the property held by her in trust in order that she might protect and preserve it as a home for the minor children of the settlor, the trial court might properly conclude that the execution of a trust deed by the trustee to secure payment of money borrowed for such purposes, although not specifically authorized by the settlor was nevertheless an act implied in the general directions contained in the letter of March 9, 1925, and a reasonable and proper means for carrying out the settlor's expressed desire and intention that the property be preserved as a home for her minor children. ▇ We are also of the opinion, however, that the burden of making such showing rested upon respondents, Bess Brooks and the American National Bank of San Bernardino. This burden was not sustained by the above-named respondents. The only evidence respecting this important feature of the case contained in the record consists of the testimony of the wit-

ness R. D. McCook, president of respondent bank. This witness testified that the money to secure whose repayment the trust deed was executed was disbursed under very careful supervision and was used in the payment of claims against the property and for bills and accounts against Letta Wood, most of which were accumulated during her last illness and that the money was borrowed by the trustee because of the very urgent necessity of paying the charges that had accumulated. This testimony, in our opinion, was not sufficient to authorize the trial court in finding, as it did, that the execution of the trust deed to respondent bank was an act required to be done in order that the object and purpose for which the trust was created should be accomplished.

█ There remains for consideration the question of the application of section 869a of the Civil Code to the grant deed and the earlier trust deed executed in favor of the respondent bank by the trustee Bess Brooks. It is the contention of respondents that, since it satisfactorily appears that the transaction between the trustee Bess Brooks and the respondent bank whereby the sum of $2,200 was loaned by the bank to the trustee who thereupon executed the trust deed to secure the repayment of the loan was free from fraud and valuable consideration, to wit, the loan of $2,200, was given, therefore the presumption that the trustee held title to the property covered by the trust deed in her own individual right free from any trust became conclusive in favor of the encumbrancer as to the beneficiaries undisclosed by the original deed which conveyed title to the trustee. It cannot be maintained nor is it suggested that the respondent bank, encumbrancer under the trust deed, did not have actual notice that the original deed, whereby title was conveyed to respondent Bess Brooks, although, on its face, it conveyed absolute title, in fact conveyed merely legal title which was to be held in trust for the beneficiaries named in the letter written by Letta Wood on March 9, 1925. The letter of March 16, 1925, signed by the president of the respondent bank, addressed to Letta Wood, shows that the deed from W. E. Daimwood and wife to Bess Brooks was prepared by the respondent bank and that the declaration of trust executed by Bess Brooks on the same date on which the deed to her was executed was sent to Letta Wood with the letter. Further, the declaration of trust executed

by the respondent bank on April 12, 1926, recites that "it is understood and agreed by and between the parties hereto namely, the trustee and trustor, that prior to the conveyance of the above described real property to the trustee, the trustor had no legal, equitable or beneficial interest in the above described real property but that the trustor held legal title to the property as trustee for the sole benefit of the two beneficiaries hereunder". Nevertheless, although it is undisputed that the encumbrancer had full knowledge of the fact that respondent Bess Brooks held title, not in her own right but merely as trustee, it is said that, since the original deed purported to convey title to her absolutely without naming any beneficiaries, therefore the respondent bank which accepted the trust deed in good faith and for valuable consideration is protected by the conclusive presumption raised by the statute. It may be conceded that the loan of $2,200 by the bank constituted valuable consideration. It may also be conceded that the transaction between the bank and Bess Brooks was free from any taint of fraud. It is obvious that the solution of the problem depends ultimately on the meaning of the phrase "good faith" as used in the statute. If, as stated in *Heney* v. *Sutro & Co.*, 28 Cal. App. 698, 702 [153 Pac. 972, 974], it "imports that in any given case the transaction involved was honestly conceived and consummated without collusion, fraud, or knowledge of fraud, and without intent to assist in a fraudulent or otherwise unlawful design" the contention of respondents that the statute was framed to cover just such a situation as is here presented possesses merit. In this connection it is pointed out that section 869 of the Civil Code provides that where an express trust is created in relation to real property but is not declared in the grant to the trustee or in an instrument signed by him and recorded in the same office with the grant to the trustee, the grant to the trustee must be deemed absolute in favor of purchasers from such trustee, without notice, and for a valuable consideration. It is said that the failure of the legislature to incorporate in a statute adopted at a much later date the element of lack of notice by a purchaser or encumbrancer from a trustee imports an intent on the part of the law-making body that lack of notice shall not be regarded as a necessary element of good faith as this phrase is used in the

statute under consideration. The very fact that section 869 of the Civil Code requires lack of notice by a purchaser from a trustee under an express trust in order that the grant from such trustee shall be deemed absolute while the statute later enacted dealing with a similar situation but broader in terms contains no requirement that a purchaser from the trustee shall have received the grant without notice of rights of the original grantor or of beneficiaries unnamed in the instrument conveying title to the original grantee is said to be significant and to indicate conclusively a legislative intent that lack of notice by a purchaser or encumbrancer shall not be an essential prerequisite to the protection of a purchaser or encumbrancer who acts in good faith and parts with valuable consideration in return for a grant or instrument of encumbrance from one who holds title under a deed of conveyance which fails to designate the beneficiaries for whose benefit the trust was created. Careful search fails to disclose any decision of the Supreme Court of California or of any court of appeal of this state wherein that portion of section 869a of the Civil Code here under consideration has been construed. The phrase "good faith" generally imports lack of notice by a purchaser of equities of third parties. In Bouvier's Law Dictionary a *bona fide* purchaser is defined to be "one who buys property of another without notice that some third person has a right to, or interest in, such property, and pays a full and fair price for the same at the time of such purchase, or before he has notice of the claim or interest of such other in the property." In *Eversdon* v. *Mayhew,* 65 Cal. 163, 167 [3 Pac. 641], it is said that a purchaser of property who has notice, actual or constructive, of the prior equity of a third person is not a *bona fide* purchaser. The rule thus declared is approved in *Davis* v. *Ward,* 109 Cal. 186 [50 Am. St. Rep. 29, 41 Pac. 1010]. In *County Bank of San Luis Obispo* v. *Fox,* 119 Cal. 61 [51 Pac. 11, 12], the rule is thus stated:

"Again, it is well settled that one who claims to be a *bona fide* purchaser must plead the facts essential to make him such, that is, that he purchased for value and paid the consideration before he had notice of the prior conveyance or mortgage."

In *Kenniff* v. *Caulfield*, 140 Cal. 34, 45 [73 Pac. 803], the court, speaking of a *bona fide* purchaser, said:

"To entitle a party to protection as such a purchaser, he must aver and prove the possession of his grantor, the purchase of the premises, the payment of the purchase money in good faith, and without notice, actual or constructive, prior to and down to the time of payment, for if he had notice, actual or constructive, at any moment of time before the payment of the money he is not a *bona fide* purchaser."

This language is quoted with approval in *Title Guarantee etc. Co.* v. *Henry*, 208 Cal. 185, 192 [280 Pac. 959]. It would appear, therefore, that a purchaser or encumbrancer of real property who is shown to have had notice of prior equities of third persons is not a purchaser or encumbrancer in good faith. It is obvious that if the deed by which the property was originally conveyed to Bess Brooks had contained the names of the beneficiaries, the respondent bank could not have been heard to maintain that it was a purchaser or encumbrancer in good faith for the reason that it would then have had notice that the beneficiaries had rights in the property which could not be destroyed or nullified, even though the bank had paid a fair price and the transaction was untainted by fraud. How, then, can the bank with full and actual knowledge of all the circumstances under which the trust was created, the names of the beneficiaries, the object of the trust, and the length of time it was to continue maintain that it acted in good faith in accepting a deed of trust from the person known by it to be merely a trustee, holding legal title for the sole benefit of such beneficiaries? It will not do to say that in this particular case the transaction was in reality for the benefit and protection of the *cestuis que trustent* and therefore should be upheld. The general rule is that a purchaser or encumbrancer with notice of the equities of third persons cannot claim the protection afforded to purchasers in good faith. To hold that a purchaser or encumbrancer with such knowledge shall prevail because it appears that such purchaser or encumbrancer had no intention of defrauding the beneficiaries would serve to open the door to the perpetration of fraud. The reasoning which applies to the trust deed applies with equal force to the grant deed executed

by respondent Bess Brooks in favor of respondent, American National Bank of San Bernardino.

For the reasons herein set forth the judgment is reversed.

MARKS, J., Concurring.—I concur in the foregoing opinion and judgment. Nothing said therein should be construed as holding that the superior court, sitting as a court of equity, might not have power to order a sale of the real property forming the *corpus* of the trust in a proper proceeding, if circumstances should arise showing that such an action were necessary and the only method in which any portion of the trust estate could be preserved. for the beneficiaries. (26 R. C. L. 1282, sec. 133; 39 Cyc. 552.) This question is not presented on this appeal and has not been considered by us.

Barnard, P. J., concurred.