E. FAXON BISHOP, ET AL., TRUSTEES UNDER THE WILL AND OF THE ESTATE OF BERNICE P. BISHOP, DECEASED, *v.* WILLIAM B. PITTMAN, ATTORNEY GENERAL OF THE TERRITORY OF HAWAII.

No. 2233.

ARGUED NOVEMBER 8, 1935.                    DECIDED DECEMBER 7, 1935.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE CASE IN PLACE OF BANKS, J., UNABLE TO ATTEND ON ACCOUNT OF ILLNESS.

648

OPINION OF THE COURT BY COKE, C. J.

The trustees of the estate of Bernice P. Bishop, deceased, brought their bill in equity in the court below seeking instructions in reference to the distribution of the sum of $17,194.53 which came into their hands representing in part the value of certain improvements on a tract of land acquired by the federal government by condemnation and located at Watertown, Halawa, City and County of Honolulu, Territory of Hawaii. A portion of the land was at the time of condemnation under lease in small areas to various tenants who had erected thereon the improvements in question. The specific question propounded to the court below was whether the trustees of the charitable trust estate of Bernice P. Bishop could legally distribute to the various lessees of the land the sum above mentioned as representing the value of the interests of the lessees in the improvements. The attorney general of the Territory, as representative of the *cestuis*, was named as respondent and interposed his answer praying that the petitioners be instructed that under the terms of the will of Bernice P. Bishop creating the trust they could not legally distribute the fund or any part of it to the lessees. At the conclusion of the hearing the circuit judge rendered a decision

advising and instructing the trustees that under the will of Bernice P. Bishop they were authorized in their discretion to distribute the sum of $17,194.53 between the several lessees named in the bill of instructions. A decree to the same effect was entered in the cause. From this decree the attorney general has brought the controversy to this court on appeal. When the cause reached this court the lessees were permitted to intervene and present their claim to the fund.

The leases from the trustees to their several tenants ran for the term of twenty years and were in force at the time of the taking over of the premises by the federal government. These leases all contain the following proviso: "Provided, however, and this demise is upon this condition, if the lessee shall fail to pay the said rent or any part thereof within ten days after the same becomes due, whether the same shall or shall not have been legally demanded, or shall become bankrupt, or shall fail faithfully to observe or perform any of the covenants herein contained and on the part of the lessee to be observed and performed, or shall abandon the said premises, or the government of the United States shall desire immediate possession of the demised premises, the lessors may at once re-enter said premises or any part thereof in the name of the whole and, upon or without such entry, at their option terminate this lease without service of notice or legal process and without prejudice to any other remedy or right of action for arrears of rent or for any preceding or other breach of contract; or if at any time or times during the said term the government of the United States of America shall notify the lessors in writing that it desires immediate possession of the said premises and the lessors shall re-enter said premises in response to such notification or if the government of the United States of America or of the Territory of Hawaii or any county,

municipality or other subdivision of the Territory of Hawaii, or any public service company, shall condemn the said premises, or any part or parts thereof, for any public use or otherwise, then and in every such case the estate and interest of the lessee in the said premises and in the lease herein made shall at once cease and determine, and the lessee shall not by reason of such condemnation or re-entry after such notification be entitled to any claim either against the lessors or others for compensation or indemnity and all compensation payable or to be paid for or on account of the said premises by reason of the condemnation as aforesaid, shall be payable to and be the sole property of the lessors, and the lessee shall have no interest in or claim to such compensation or any part or parts thereof whatsoever."

The record shows that in February, 1935, a judgment was entered in the United States district court for the Territory of Hawaii in a proceeding brought by the United States of America against various land owners including the trustees of the Bishop estate condemning to the federal government for public use the property in question, the trustees being awarded the sum of $298,977 for the value of the fee and the sum of $50,000 for the value of the improvements thereon. It was expressly adjudicated by the federal court that no other persons, parties, lessees, sublessees, unknown claimants or persons whomsoever were entitled to any award as compensation for the taking by the federal government of the property in question. The claims of the tenants of the Bishop estate to participate in a portion of the award made for the value of the improvements on the property demised to them were called to the attention of the judge of the federal court before the entry of the judgment above referred to and a formal ruling was made in the case to the effect that the tenants, by virtue of the provision in their leases above quoted,

were not entitled to participate in such proceedings nor to have any part in any award that might be made with respect to the value of the improvements erected upon their several leaseholds.

It is thus apparent that the decisions on the pending controversy by the two local tribunals, namely, the United States district court and the territorial circuit court, are in direct conflict. The property belonging to the trust estate and acquired through eminent domain by the federal government, situated at Watertown, Oahu, was a part of the residuary estate of Bernice P. Bishop which, under her will, was conveyed in trust to her trustees to be administered by them for the purposes and with the general powers expressed in her will, the thirteenth paragraph of which reads as follows: "I give, devise and bequeath all of the rest, residue and remainder of my estate real and personal, wherever situated unto the trustees below named, their heirs and assigns forever, to hold upon the following trusts, namely: to erect and maintain in the Hawaiian Islands two schools, each for boarding and day scholars, one for boys and one for girls, to be known as, and called the Kamehameha Schools. I direct my trustees to expend such amount as they may deem best, not to exceed however one-half of the fund which may come into their hands, in the purchase of suitable premises, the erection of school buildings, and in furnishing the same with the necessary and appropriate fixtures furniture and apparatus. I direct my trustees to invest the remainder of my estate in such manner as they may think best, and to expend the annual income in the maintenance of said schools; meaning thereby the salaries of teachers, the repairing buildings and other incidental expenses; and to devote a portion of each years income to the support and education of orphans, and others in indigent circumstances, giving the preference to Hawaiians of pure or part

aboriginal blood; the proportion in which said annual income is to be divided among the various objects above mentioned to be determined solely by my said trustees they to have full discretion. I desire my trustees to provide first and chiefly a good education in the common English branches, and also instruction in morals and in such useful knowledge as may tend to make good and industrious men and women; and I desire instruction in the higher branches to be subsidiary to the foregoing objects. For the purposes aforesaid I grant unto my said trustees full power to lease or sell any portion of my real estate, and to reinvest the proceeds and the balance of my estate in real estate, or in such other manner as to my said trustees may seem best. I also give unto my said trustees full power to make all such rules and regulations as they may deem necessary for the government of said schools and to regulate the admission of pupils, and the same to alter, amend and publish upon a vote of a majority of said trustees. I also direct that my said trustees shall annually make a full and complete report of all receipts and expenditures, and of the condition of said schools to the Chief Justice of the Supreme Court, or other highest judicial officer in this country; and shall also file before him annually an inventory of the property in their hands and how invested, and to publish the same in some Newspaper published in said Honolulu; I also direct my said trustees to keep said school buildings insured in good Companies, and in case of loss to expend the amounts recovered in replacing or repairing said buildings. I also direct that the teachers of said schools shall forever be persons of the Protestant religion, but I do not intend that the choice should be restricted to persons of any particular sect of Protestants."

In paragraph 17 of codicil 1 of the testatrix's will it is provided: "I give unto the trustees named in my said

will the most ample power to sell and dispose of any lands or other portion of my estate, and to exchange lands and otherwise dispose of same; and to purchase lands and to take leases of land whenever they think it expedient, and generally to make such investments as they consider best."

The bill for instructions presented by the trustees to the court below contains the following averment: "That several of said lessees have suggested to your petitioners that though they are not legally entitled to receive any part of said proceeds of condemnation, they have a moral claim thereto, in which said suggestion your petitioners are inclined to concur, and would, if it be found to be permissible under the terms of said trust as authorized by the order of this court, be willing to reimburse said lessees to the extent of said sum of $17,194.53, which said sum would be apportioned between said lessees in such fair and reasonable manner as may be determined by your petitioners in accordance with the character of the improvements and the length of the unexpired terms of said leases respectively; that notwithstanding the attitude of your petitioners as above stated, they have been advised by counsel that they are not authorized to make such payments and that it would be unsafe for them to do so without the authorization of this court." Equity has jurisdiction over all matters relating to trust property and in the execution and administration of the trust and in all cases of doubt as to their rights and liabilities and what their conduct should be trustees are entitled to and should seek instruction and direction from the court so as to prevent them from committing an innocent breach of trust. *Perry on Trusts*, § 476A. *Laughlin* v. *Wells Bldg. Co.*, 171 N. W. 755; *Packard* v. *Illinois Trust & Savings Bank*, 104 N. E. 275; *Denegre* v. *Walker*, 73 N. E. 409.

It nowhere appears in the petition that the trustees entertained any doubt as to their power or authority in

the premises. This is a necessary averment in a petition by trustees requesting instructions of a court and upon demurrer the defect would be fatal. The respondent, however, did not demur to the petition but answered and the sufficiency of the petition in that regard was not raised. While not desiring to establish a precedent, this court due to the importance of the questions involved will likewise disregard the imperfections of the petition.

It is a recognized principle of the law of trusts that unless a trustee is authorized to otherwise dispose of trust property it is the duty to hold the trust estate for the *cestui que* trust and to effect the purposes and objects declared by the trust instrument and it is incumbent upon him to preserve and protect the trust property for all the beneficiaries and to administer it strictly in compliance with the tenor of the trust. In *Graham Bros. Co.* v. *Galloway Woman's College,* 81 S. W. (2d) 837, 839, the court says: "It is a familiar doctrine that it is the duty of the trustee to administer the trust according to the provisions thereof, exercising the utmost good faith and business prudence with respect to the funds committed to his care and bearing in mind that his primary duty is to preserve such funds while investing the same so that the purposes for which the trust was created may be served." See also *Wood* v. *American Nat. Bank,* 14 Pac. (2d) 110; *Haas* v. *Wishmier's Estate,* 190 N. E. 548; *Bruce* v. *Republic Nat. Bank & Trust Co.,* 74 S. W. (2d) 461. Counsel for the lessees recognize that there is an absence of any legal obligation upon the trustees to distribute the fund in question to the lessees but they endeavor to demonstrate that the trustees are under some sort of moral obligation to make the distribution and this theory is the basis of the decree of the trial court. Appellant urges, first, that no moral obligation exists and, second, if any such obligation does exist it would afford no legal justification for distri-

bution of the trust fund in question among the lessees. There is no claim that the contents of the leases were not fully understood by the parties thereto at the time of execution. There is also a complete absence of any allegations or showing of the existence of fraud, mistake, deception or other factors in connection with the execution of the leases which might afford the basis for equitable relief. Apparently the lessees were familiar with all of the provisions in the leases and executed and accepted them with that knowledge. The leases did not require the tenants to improve the demised premises nor to erect buildings thereon. They were however expressly forewarned that if they did so the value of such improvements or buildings would be lost to them should the property at any time within the term of the demise be taken by the government for public purposes. In the event of no such taking the improvements would have become the property of the lessors at the expiration of the leases.

In the light of these facts it is difficult to conceive upon what theory the existence of any obligation, moral or otherwise, can find a basis. Moral obligation is defined as "a duty which would be enforceable at law were it not for some positive rule which exempts the party in that particular instance from legal liability." *Longstreth* v. *City of Philadelphia*, 91 Atl. 667; *Gilman* v. *Hunnewell*, 181 N. Y. S. 202. This court has recognized the existence of a moral obligation resting upon the government where license fees were illegally collected by the Territory (see *Smithies* v. *Conkling*, 20 Haw. 600) and also where losses were sustained by reason of unforeseen changes in physical conditions by a person contracting with the government. See *In re Mott-Smith*, 29 Haw. 343. But the theory of moral obligations announced in those decisions finds no support in the circumstances of the present controversy. The trial court in its decision, as do also counsel for the

lessees in their brief, attempts to justify the payment of the fund to the lessees upon the theory that openhanded munificence of this nature would enhance the reputation of the trust estate, the court saying: "The trustees are right to consider the reputation of the charitable estate which they so ably represent. The amount involved is a mere bagatelle to the estate but means much to the ousted tenants. The loss in reputation if this money is retained if measured in dollars would be far greater than the amount here involved."

Counsel for lessees in their brief say in referring to the subject: "It is submitted that if the trustees are permitted to carry out their expressed desire in the case at bar, they will have made a sound investment in public opinion and will have set an example in moral dealing, such as the Kamehameha Schools which the trust estate was designed to create, endeavor to inculcate into their students." A board of trustees of a trust estate may not without express authority conferred by the creator of the trust indulge in this class of vicarious generosity at the expense of the trust *res* for the purpose of establishing or maintaining a reputation for magnanimity or philanthropy. If the trustees in the present case may do so then they may under the guise of charity dissipate the estate without limit through gifts, donations or other form of gratuities regardless of the fact that Bernice P. Bishop in plain language directs them to devote the income of her trust estate for the purpose of maintaining the Kamehameha Schools devoted to the education of Hawaiian children. It is our conclusion that the trustees are under no obligation, either legal or moral, to distribute the money in question to their lessees. The fund is a part of the trust *res* and must be treated as such by the trustees and applied in the manner authorized and directed under the terms of the instrument creating the trust and not

otherwise. Charity is universally recognized as a cardinal virtue but it may not be indulged in by the representatives of a trust estate unless authorized by the creator of the trust. 3 Bogert, Trusts and Trustees, § 551.

Having found that the trustees are under neither legal nor moral obligation to distribute the fund in question to their tenants it becomes unnecessary for this court to decide whether a trustee may use trust funds to discharge a purely moral obligation.

The decree of the court below is reversed and the petitioners-appellees are advised and instructed that they may not distribute the fund in question between the lessees referred to in the petition herein.

*Robertson & Castle* for petitioners, filed no brief and presented no argument.

*S. B. Kemp* and *C. A. Gregory* (also on the brief) for certain lessees.

*G. P. Kimball,* Deputy Attorney General (*W. B. Pittman,* Attorney General, with him on the briefs), for respondent.