[No. 15090. Department One.—August 16, 1893.]

MARGARET DORAN, APPELLANT, v. JAMES DORAN, RESPONDENT.

99  311
122 427

CONVEYANCE DURING LAST SICKNESS—TRUST—FINDING—ABSOLUTE CONVEYANCE. —Where a person during his last sickness and in contemplation of death executed a conveyance of his real property to his brother, of his own motion and without any solicitation, undue influence, or fraud on the part of the grantee, the mere statement by the grantor to the grantee at the time of the conveyance that he knew the latter would do what was right, does not show either an express trust or a trust arising by operation of law, and a finding that such conveyance is absolute will not be disturbed upon appeal.

ID.—TRUST, HOW CREATED.—An express trust in real property can only be created or declared by a written instrument subscribed by the trustor or trustee; but an express or implied trust in relation to personal property may be declared and proved by parol.

GIFT CAUSA MORTIS—REVOCATION.—A gift causa mortis may be revoked by the donor at any time during his life and without the consent of the donee.

ID.—ASSIGNMENT OF PASS-BOOK—DEMAND FOR MONEY—TRUST FOR HEIRS.— Where a person during his last illness, and in contemplation of death, assigned a bank pass-book to his brother, and some five days thereafter on the morning of his death, told his brother to hurry down to the bank and get out his money and bring it up to him, a revocation of the gift is thereby shown, and the brother will be held to be a trustee of the money for the heirs of the decedent.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.

The facts are stated in the opinion.

*James Gartlan*, for Appellant.

A trust in land may be created by operation of law. (Civ. Code, sec. 852; Code Civ. Proc., sec. 1971; Pomeroy's Equity Jurisprudence, secs. 155, 1030.) The evidence was sufficient to show a resulting trust. (Perry on Trusts, secs. 150, 152, 160; *Russ* v. *Mebius*, 16 Cal. 350; Pomeroy's Equity Jurisprudence, sec. 1032; Lewis on Trusts, p. 242, 8th ed.) The evidence was also sufficient to establish a constructive trust. (*Brison* v. *Brison*, 75 Cal. 525; 7 Am. St. Rep. 189; *Broder* v. *Conklin*, 77 Cal. 330; *Feeney* v. *Howard*, 79 Cal. 529; 12 Am. St. Rep. 162.)

*Robert H. Countryman*, for Respondent.

The grantor had a perfect right to convey his property as he did, and the conveyance vested an absolute title in the grantee.

(*Carty* v. *Connolly*, 91 Cal. 15; *Mowry* v. *Heney*, 86 Cal. 471.)
No trust could be raised in the land by parol. (Code Civ.
Proc., sec. 1971; Civ. Code, sec. 1091; *Barr* v. *O'Donnell*, 76
Cal. 469; 9 Am. St. Rep. 242.) The transfer of the money
was a complete gift *causa mortis*. (Civ. Code, secs. 1040, 1149–
1153; *Druke* v. *Heiken*, 61 Cal. 346; 44 Am. Rep. 553; *Vandor*
v. *Roach*, 73 Cal. 614; *Estate of Stevens*, 83 Cal. 325; 17 Am.
St. Rep. 252.)

BELCHER, C. — On the thirtieth day of June, 1887, John
Doran was the owner of a certain lot of land in the city of San
Francisco, and of seven hundred and seventy dollars, money on
deposit to his credit in the Hibernia Savings and Loan Society
of San Francisco. On that day he executed to the defendant,
James Doran, a deed of the lot and an assignment in writing
of the pass-book showing the amount to his credit in the said
bank. John and James were brothers, and the sons of the
plaintiff.

The plaintiff seeks by this action to have a trust declared in
her favor as to the real and personal property so transferred.

The complaint alleges in substance that John was moved and
induced to convey the said lot and assign the said bank account
to the defendant solely by reason of the confidence he had in
defendant, and because of the promise defendant then made to
reconvey the lot upon request to his grantor, and to hold for
his use the money, and the further promise in the event of John's
death to convey the lot to plaintiff, and to pay to her so much
of the said money as might remain in his, defendant's, hands;
that John died on the fifth day of July, 1887, before any recon-
veyance of the land had been made, and leaving intact in de-
fendant's hands the whole sum of money transferred to him;
and that plaintiff had demanded of defendant that he convey
to her the said land and pay to her the said money; but he
refused and still refuses to do so, except that he had paid to
her one hundred dollars of the money. Wherefore judgment
is asked, "that he, defendant, be declared a trustee for plaintiff
of said land, and for a conveyance thereof to her; that he, de-
fendant, be declared a trustee for plaintiff in the sum of six
hundred and seventy dollars, and that he be directed to pay

such sum to her, together with the interest found due, and for costs of suit."

The answer to the complaint was a general denial.

The case was tried by the court, and the findings were in effect that the said conveyance and assignment were absolute and were not made by reason of any confidence John had in defendant, nor upon any promise of defendant to reconvey the lot to John or to hold the money for his use, nor upon any promise in the event of John's death to convey the lot or pay over any part of the money to the plaintiff. Judgment was accordingly entered that plaintiff take nothing by the action, and that defendant recover from her his costs and disbursements therein. From this judgment and an order denying her motion for new trial, the plaintiff appeals.

The only point made for reversal which need be noticed, is that the findings were not justified by the evidence. The proceedings at the trial are briefly stated in the record as follows: Plaintiff introduced in evidence the deed and pass-book in question, the deed expressing a nominal consideration and the pass-book numbered 108,800, showing a balance to the credit of the depositor of seven hundred and seventy dollars.

"Proof was then made that on June 30, 1887, John Doran was lying dangerously ill at St. Mary's Hospital, San Francisco, and expressed a desire to settle his affairs; that the sick man knew that his mother, Margaret Doran, the plaintiff, was his heir-at-law; that for the purpose of avoiding the expense and delay of probate proceedings, John determined to transfer all his property in trust; that he was aware of the risk he ran in making such transfer, but declared that he would make his brother James, the defendant, his trustee, knowing that his said brother would do what was right; that thereupon John conveyed to defendant the aforesaid lot of land on Jersey Street, and assigned to said defendant the said pass-book No. 108,800. It was also proven that John Doran had died on the fifth day of July, 1887, intestate, unmarried, and without issue, and that his father had predeceased him.

"The defendant, James Doran, testified in substance: 'I am defendant in this action; John Doran died on or about the fifth day of July, 1887; he was my brother. The plaintiff,

Margaret Doran, is my mother, and mother of deceased. My father is dead. My brother John was never married; I was present when John made the transfer of the lot on Jersey Street, and the Hibernia Bank pass-book. What my brother meant when he said I would do what was right was that I would reconvey the property to him if he recovered from his then sickness; nothing further was said by John on the subject. On the morning of the day of his death, John said to me he was feeling awful bad, that he thought he was going to die; that I should hurry down to the Hibernia Bank and get out his money and bring it up to him; I went accordingly to the bank and drew out his money; I was scarcely absent more than fifteen minutes, but when I got back John was dead.' It was further proven that about a week after the death of John, the defendant went to the office of the attorney who had drawn up and witnessed the deed and assignment by which the deceased had transferred his property; that the defendant asked said attorney when the matter would come up in court; that the attorney there and then told defendant there would be no court proceedings; that to avoid all such proceedings his brother had transferred the property to him; that he, defendant, was trustee of the property, and the duty devolved upon him to carry out the wishes of deceased; that defendant left the office without making any reply."

1. Upon this record of the evidence we do not think the findings in relation to the real property can be disturbed. An express trust in real property can only be created or declared by a written instrument subscribed by the trustor or trustee. (Civ. Code, sec. 852.) There was therefore no express trust in favor of the grantor or the plaintiff, and no facts are stated from which a trust by operation of law must necessarily arise in her favor. So far as appears the conveyance was made by the grantor of his own motion, and without any solicitation, undue influence, or fraud on the part of the grantee; and it may have been intended to be absolute in case of the grantor's death, and to vest the title in fee-simple in the grantee; and that it was so intended must, in view of the findings, be presumed.

2. As to the bank account the law is different. An express

or implied trust in relation to personal property may be declared and proved by parol. (*Hellman* v. *McWilliams*, 70 Cal. 449; Perry on Trusts and Trustees, sec. 86.) And here the undisputed evidence on the part of the plaintiff shows that the pass-book was assigned to the defendant in trust for the assignor.

The respondent, however, contends that the assignment and delivery to him of the pass-book constituted a complete gift of the money *causa mortis.* Conceding this to be so, still a gift *causa mortis* may be revoked by the donor at any time during his life and without the consent of the donee. (Civ. Code, sec. 1151; *Daniel* v. *Smith*, 64 Cal. 349; *Merchant* v. *Merchant*, 2 Bradf. 432; *Parker* v. *Marston*, 27 Me. 196.) Here the respondent's own testimony very clearly shows that the gift, if made, was revoked by the donor before he died. He testified that on the morning of the day of his death, John told him to "hurry down to the Hibernia Bank and get out his money and bring it up to him; I went accordingly to the bank and drew out his money, : . . . but when I got back John was dead." This plainly indicates that John still claimed the money as his own and intended to again take it into his possession. Under these circumstances it must be held that the respondent held the money in trust and as a part of the estate of John, and that the plaintiff, as the only heir of John, had a right to have the trust enforced and the money paid over to her.

We advise that the judgment and order, so far as they relate to the real property, be affirmed, and that so far as they relate to the money, be reversed, and the cause remanded for a new trial.

Searls, C., and Temple, C., concurred.

For the reasons given in the foregoing opinion, the judgment and order, so far as they relate to the real property, are affirmed, and so far as they relate to the money, are reversed, and the cause remanded for a new trial.

Harrison, J., Garoutte, J., McFarland, J.