[L. A. No. 10736.   In Bank.—June 1, 1931.]

DAVID W. COYLE, Respondent, v. GEORGE H. COYLE et al., Appellants.

Carter & Webster for Appellants.

John Dennison and J. G. Rossiter for Respondent.

SEAWELL, J.—David W. Coyle, the plaintiff and respondent, is the father of George H. Coyle, the defendant and appellant. Margaret C. Coyle is the wife of said George H. Coyle. The children of David W. Coyle are: Mrs. Florence Quinn, a married daughter by his first marriage, and two sons by his second marriage, George H., appellant herein, being the elder of the sons. Senior Coyle's second wife was alive at the time this action was tried.

The grounds of the appeal will appear from the statement of the case as herein set forth.

■ David W. Coyle had resided in the city of Pasadena, California, for something like forty-two years and was free from indebtedness of any kind at the time he entered into the purchase of the real property which is the subject of this action. He had engaged in the poster advertising business for many years, but it would seem that he was permitting the best period of his earning ability to slip by without reckoning with the necessitudes of advancing age. His neglect for his future became the concern of his lifelong friend, George C. Montfort, who was truly his fidus Achates. Montfort was the owner of two certain parcels or lots of land situate in the city of Pasadena, the first of which is described as the S. ½ of lot 5, in block L of the Pasqual tract, as per map, and which, for convenience, will be referred to as the South Mentor Avenue property, and the second parcel being all of lot 39 of Legge's Lower tract, as per map, etc., which will hereafter be referred to as the South Fair Oakes Avenue property. Montfort persuaded David W. Coyle, as early as 1903, to enter into an oral agreement with him for the purchase of the South Fair Oakes property, and again in 1909 induced him to enter into another oral agreement for the purchase of said South Mentor Avenue property. For the first parcel he agreed to pay $1200, and for the second parcel, $4,500. The above fixed sums are conceded to be fair valuations of said properties at the time said agreements were made. The understanding between Montfort and Coyle, senior, was that the latter was to have his own time in making installment payments on account of said purchases, paying such sums at such times as it was convenient for

him to pay them. Practically no interest was charged or collected. Montfort died some two years before the trial of the action. Said David W. Coyle resided on the Mentor Avenue property at all times after said agreement to purchase made in the year 1909, and was in the exclusive control and possession of each of said parcels subsequent to the making of said agreements to purchase, paying all taxes and charges levied thereon, collecting all rents accruing for the use of a portion of said real property and exercising open and exclusive acts of ownership over them. Upon the Mentor Avenue property, upon which he resided, he expended some $2,000 in improvements.

Through the indulgence of Montfort the final installment of $823 due under said agreements of purchase was paid on or about September 22, 1922, nineteen years after the first agreement was made. At the time said final payment was made, David W. Coyle requested Montfort to permit the title to continue in him, but Montfort thought such an arrangement not advisable and decided against it. David W. Coyle was then free of any indebtedness, but he seemed to entertain unfounded fears lest he should become liable for damages by reason of someone by chance being injured by the falling of one of his billboards. He gave as a reason for his act a wish to insure himself and family a home against any misfortune that might befall him. Without consulting or informing appellant George H. Coyle or his wife of his intention, and without any knowledge on the part of either as to his intentions, he procured Montfort to execute an ordinary grant deed of said properties, naming therein as grantees his son George H. Coyle and his wife, Margaret C. Coyle. No manual delivery of said deed was made until three years thereafter, but he caused it to be filed of record four days after it was executed. Said grantees had no actual knowledge of the execution of said deed until informed of the fact by said David W. Coyle some two weeks after it was filed for recordation. Upon informing his son of his act he stated to him that he wanted him ''to have the deed in trust'' for him, but that he wanted his son and his son's wife to sign an agreement that they would return the property to him—deed back the property to him—whenever he should request them to do so. He told his son George that he wanted the deed

made as it was; that Montfort had had title for many years. He further said, "George, I want you and Margaret to sign a paper to me to convey the property back to me when I wish." George replied, "Fair enough," and Margaret said, "Certainly." The elder Coyle thereupon prepared a writing by the terms of which each agreed to convey the properties herein described to David W. Coyle upon demand. Upon execution thereof by said George H. Coyle and wife, the instrument was delivered to the senior Coyle, who kept it in his possession until George H. Coyle, some two or three years thereafter, gained possession of it by trick and device and destroyed it.

The son, George H. Coyle, made no claim whatever as to the ownership of said parcels or lots until about the year 1926, when he paid the taxes for the year 1926–27, under claim of ownership and against the will and the consent of his father. The latter's tender of the amount so paid by the son being refused by him, it was placed on deposit to his credit.

The above and other asserted acts and claims of ownership made on the part of appellant George H. Coyle caused the respondent David W. Coyle to file his action against his said son and wife wherein he prayed for a decree adjudging said grantees to be trustees for said David W. Coyle and for an order commanding them to convey the legal title thereof to him. At the time said son first made any overt claim of ownership to said real property, to wit, in the year 1926, he and his said wife conveyed such interest in said properties as was vested in them by the Montfort deed to Philip S. Pomeroy and May M. Pomeroy, as joint tenants, and they immediately thereafter reconveyed said real properties back to said George H. Coyle and Margaret C. Coyle, his wife. The court found, and the evidence completely sustains the finding, that no consideration was given or passed in either of said transactions. The court further found for the respondent on all of the major issues, and its findings are fully supported by the evidence. In fact the evidence is uncontradicted in many instances.

The court further found that the said son never at any time expended or paid out any money toward the purchase price of said real properties, nor contributed anything of value thereon for the maintenance or upkeep of said prop-

erties until the month of September, 1926, at which time he paid the taxes above mentioned; that he never received or demanded or laid claim to any of the rents, issues or profits arising out of the uses of said real property until the date above stated, and he knew at all times the terms and conditions under which his father had acquired said real properties and that he was regularly paying all taxes, assessments, insurance and other charges levied against the same, and that the father had resided with his family upon the Mentor Avenue property since he contracted to purchase it; that since said respective agreements of purchase were made the father had at all times exercised absolute dominion over both of said parcels of land; that any labor that said son ever performed on or about said premises was charged against the father and paid by him; that no consideration moved from either side in the Pomeroy transaction and the manual passing of deeds between the parties thereto was but a mere pretense of passing title; that respondent, while residing with his family on said Mentor Avenue property, expended upwards of $2,000 on account of improvements.

The court also found, in accordance with the allegations of the complaint, that the rather eccentric acts of respondent whereby he caused said son and wife to be named as grantees in the Montfort deed and said deed to be recorded without their knowledge, were done for his convenience and without the intention of said respondent to divest himself of title, and this finding is supported by reasonable inferences drawn from the facts of the entire subject matter and the relations which the parties sustained one to the other. It is certain that the father believed that the son would reconvey said real property upon demand, and made the conveyance influenced solely by such belief. His action can be accounted for upon no other rational theory. The son seems to have been in much better circumstances financially than was the father, who seemed somewhat disturbed as to what the future might hold for him. His son, upon first learning of the father's act, fortified him in his faith and signed an agreement in affirmance of the purpose for which he and his wife accepted the trust as nominal grantees. The son stood by for four years and saw the father making valuable improvements on said

properties, paying taxes, insurance and other charges, and collecting rentals, and made no claim of ownership or of an interest therein until after he had destroyed the agreement to reconvey which he had surreptitiously obtained. The equities of the case are overwhelmingly with respondent.

*Sherman* v. *Sandell*, 106 Cal. 373 [39 Pac. 797], states the rule which should guide appellate courts upon the review of a grantor's intention: "This issue is purely one of fact, and is to be determined by the trial court, and to the extent that its determination rests upon the mere preponderance of evidence, or upon the consideration of conflicting or contradictory evidence, the finding of the trial court is not open to review in this court."

The trial court did not abuse its discretion by permitting respondent to amend his complaint with respect to setting forth said destroyed agreement.

Judgment affirmed.

Richards, J., Shenk, J., Langdon, J., Curtis, J., and Waste, C. J., concurred.