[Civ. No. 2121. Fourth Appellate District.—January 10, 1938.]

CHESTER BROOKS WOOD et al., Plaintiffs and Appellants, v. THE AMERICAN NATIONAL BANK OF SAN BERNARDINO (a Banking Corporation), Defendant and Appellant; IRA B. SWEATMAN, Intervener and Respondent.

Charles Bagg for Plaintiffs and Appellants.

Surr & Hellyer for Defendant and Appellant.

MARKS, J.—This action was tried on a second amended complaint and an amendment thereto, the answer thereto of The American National Bank of San Bernardino, and a complaint in intervention of Ira B. Sweatman, and the answers thereto.

Chester Brooks Wood and Carolyn Lyde Wood are the minor children of Chester G. Wood and Letta Brooks Wood, his wife, now deceased. We will refer to the minor plaintiffs as the Wood children and to The American National Bank of San Bernardino as the bank.

About March, 1925, Mrs. Wood was evidently purchasing from W. E. Daimwood and his wife, with her separate funds, a house and lot in the city of San Bernardino. She was ill in a Los Angeles hospital at the time and engaged the bank to complete the purchase. After some correspondence which Mrs. Wood carried on with the bank, through its president, it was decided to take title· to the property in the name of Bess Brooks, a sister of Mrs. Wood, Miss Brooks to act as trustee. The bank prepared and had executed an ordinary grant deed dated March 16, 1925, conveying the property from Mr. and Mrs. Daimwood to Bess Brooks. At the same time Bess Brooks executed and acknowledged the following instrument:

"THIS IS TO CERTIFY that that certain property described as: (Description) conveyed to me by W. E. Daim-

wood and wife under Deed of even date herewith is in fact the property of my sister LETTA WOOD, and the title is held by me in trust for her, and I will upon her request execute a Deed to this property as she may direct.

"BESS BROOKS."

On the same day this instrument was delivered to Mrs. Wood, a duplicate was placed in the files of the bank. It was never recorded.

Mrs. Wood died intestate March 21, 1926. There has been no probate of her estate. Bess Brooks was never authorized by any court order to encumber or convey the property, nor was a substitution of the trustee ever so authorized. Mrs. Wood never requested nor ever authorized Bess Brooks to convey the property to anyone.

On April 6, 1926, Chester G. Wood executed a quitclaim deed to the property to Bess Brooks. On the same day Bess Brooks made, executed and delivered to the bank her promissory note in the sum of $2,200, due three years after date, bearing interest at eight per cent per annum. This note was secured by a deed of trust on the trust estate property. On April 12, 1926, Bess Brooks executed a grant deed conveying this property to the bank and on the same day the bank and Bess Brooks executed a declaration of trust, reciting among other things, that the bank held the property in trust for the Wood children with power of sale or disposition. Thereafter the bank contracted with Robert H. Emery to sell the property to him for $5,297.07, payable in instalments. It received Emery's unsecured note for $340. The Emery contract was never performed. On April 30, 1926, the bank sold and assigned the Bess Brooks note and deed of trust to Ira B. Sweatman for the consideration of $2,209.80 to it paid. It is admitted by all parties that Sweatman was an innocent purchaser for value without notice of any defect in the note and deed of trust. The bank retained possession of the trust property and between June 5, 1926, and March 10, 1934, collected $2,423.14 in rents. Against this amount it claims offsets in the form of expenses paid, some of doubtful propriety, in the sum of $2,367.11.

This action was first instituted by a complaint filed on September 22, 1927. A second amended complaint was filed on March 8, 1929. An amendment to the second amended complaint was filed on June 13, 1933. The complaint in

intervention was filed on April 17, 1933. The case was first tried in 1928 and resulted in a judgment for the bank, which was entered April 24, 1929. On appeal that judgment was reversed by this court. (*Wood* v. *American Nat. Bank,* 125 Cal. App. 248 [14 Pac. (2d) 110].)

The cause was tried a second time in June, 1933. After the reversal of the judgment and before the second trial, the complaint in intervention was filed. The amendment to the second amended complaint was filed on the last day of the second trial. It contains the prayer of plaintiffs' pleadings which may be summarized as follows: (1) cancellation of the trust deed from Bess Brooks to the bank; (2) cancellation of the grant deed from Bess Brooks to the bank; (3) enjoining the bank from carrying out the Emery contract; (4) an accounting by the bank of its management of the trust property; (5) for costs; (6) for general relief.

The trial court found the facts of the execution of the various instruments as we have detailed them, with the addition, that in accordance with a letter dated March 9, 1925, written by Mrs. Wood to the president of the bank and quoted in *Wood* v. *American Nat. Bank, supra,* Mrs. Wood instructed the bank to have title to the property placed in Bess Brooks, as trustee, for the benefit of the Wood children "to be kept intact and preserved for a home for said minor plaintiffs until such time as they should both become of age"; that the reasonable value of the property was $5,250 and its rental value $40 per month; that of the $2,200 loan, $683.46 had been spent for the preservation of the property; that after April 12, 1926, date of the deed from Bess Brooks to the bank, its services in the case and in preservation of the property were gratuitous.

The complaint in intervention contained the following allegation:

"The entire sum of $2200.00, which was borrowed by said Bess Brooks as such trustee from defendant The American National Bank of San Bernardino, California, and which was evidenced by said note, was necessary for the preservation of said real property, and said sum and the making of said note and trust deed were each and all necessary to preserve said real property and to prevent the loss of said property by said Bess Brooks as trustee as aforesaid, and by said last two mentioned plaintiffs (the Wood children)."

The trial court found all allegations of this pleading true.

An interlocutory decree was entered which may be summarized as follows: That the bank within sixty days reduce the debt created by the Bess Brooks note from $2,200 to $683.42; that the bank be enjoined from carrying out the Emery contract; that an accounting be had; that after the accounting and its approval the bank convey the property to the Wood children subject to its lien in the sum of $683.42 or so much thereof as may remain unpaid; that in the event the accounting shows money unpaid from the bank to the Wood children they have judgment for such amount.

The final judgment provided as follows: (1) That the Bess Brooks note and deed of trust constituted a first lien on the property in favor of Ira B. Sweatman; (2) that the Wood children have judgment against the bank in the sum of $1516.58; (3) that the deed from Bess Brooks to the bank be canceled and that the bank has no right, title or interest in the trust property; (4) that the bank transfer to the Wood children the Emery note; (5) that the bank pay to the Wood children the further sums of $64.88 and $545.97 in full satisfaction of all obligations of the bank up to March 10, 1934.

Plaintiffs have appealed from the entire judgment. The bank has appealed from portions of the judgment which it carefully specified in its notice of appeal.

The record contains the following stipulation: "It is stipulated between the parties to this action that, since the trial of this action and the entry of the judgment herein, the Intervener, Ira B. Sweatman, has caused said deed of trust executed by Bess Brooks covering the real property involved in this action to be foreclosed, and that at the sale thereof, the said Ira B. Sweatman purchased said property and is now the record owner of said real property."

█ The first and perhaps the most important issue for determination on this appeal is the question; who is the beneficiary, or who are the beneficiaries of the trust of which Bess Brooks was trustee. That such a trust in real property was created is conceded by both parties. That it was an express trust created by an instrument subscribed by the trustee cannot be doubted.

Section 852 of the Civil Code provides as follows:

"No trust in relation to real property is valid unless created or declared:

"1. By a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing;

"2. By the instrument under which the trustee claims the estate affected; or,

"3. By operation of law."

An examination of the deed from Mr. and Mrs. Daimwood to Bess Brooks discloses that it is in the form of an ordinary grant deed and contains no provision limiting the title of the grantee nor does it attempt to establish a trust. The instrument signed by Bess Brooks on March 16, 1925, recited that the real property conveyed to her in fee by Mr. and Mrs. Daimwood "is in fact the property of my sister Letta Wood, and title is held by me in trust for her, and I will upon her request execute a deed to this property as she may direct". This instrument is a sufficient writing subscribed by the trustee to bring it within the provisions of subdivision one of section 852 of the Civil Code. It created a trust with Bess Brooks as trustee with the express power of conveying the property by deed to the nominee of Mrs. Wood. Although Mrs. Wood had this declaration of trust in her possession for over a year prior to her death she did not exercise the right to request or direct a conveyance of the property.

Counsel argue the legal effect of the letter written by Mrs. Wood on March 9, 1925, to the president of the bank regarding the creation of the trust. This letter was evidently considered by the trial judge in reaching his conclusion that the Wood children were the beneficiaries of the trust. Mrs. Wood wrote in part as follows:

" . . . this property was given me by my father to be kept always as a home and I want to follow out his wishes and I know it would be my father's wish that if I do not recover that this property should be kept intact until my children are grown. . . . Yes, I would like to follow your suggestion & have the property deeded to my sister as trustee. If anything happens I do not recover would like the property held in trust for my daughter Carolyn when she becomes of age. . . . Unless my sister is appointed trustee, I realize my son & daughter would never have the benefit of this property should anything happen I don't recover. . . ."

We find nothing necessarily inconsistent between the intention and desires expressed in this letter and the trust as actually created. It may be fairly inferred from the letter

that Mrs. Wood had not lost hope of recovery; that it was her desire that the property be kept as a home for herself and the members of her family so that during her lifetime she could enjoy its privileges and comforts with her children; that after her death her children would have the use and ultimately Carolyn would have title to the property. The home was really Mrs. Wood's. During her lifetime she was the natural beneficiary of the trust. It was her expressed desire that, only in the event of her death, both her children, until they were grown, and Carolyn in fee, should succeed to the benefits of the trust. Of course, this desire on the part of Mrs. Wood might have been incorporated in the declaration of trust. While this was not done in fact, it was accomplished in legal effect. Mrs. Wood was named as the beneficiary of the trust with power to direct the conveyance of the property. All that remained for her to do, under the trust, to carry out the desires expressed in her letter was to direct the trustee to convey to her two children their respective estates in the property. Under the trust which was created she had the legal power to execute and put into effect the exact trust which she contemplated when she wrote her letter. This she did not do. Perhaps death intervened to prevent this act. On the other hand, it may be possible that in the year intervening between the creation of the trust and her death Mrs. Wood changed her mind. Under the conditions of the trust she was privileged to do this. The letter expressed a desire or an intention which was never carried into effect though she had the power so to do.

It is not shown that the trustee had any knowledge of the contents of this letter. It was not subscribed by the trustee nor was it the instrument under which the trustee claimed the trust estate. It cannot therefore be considered as an instrument limiting the trust estate or designating the beneficiaries. It was merely an expression of an unexecuted intention on the part of Mrs. Wood. As we have observed, Mrs. Wood had the declaration of trust in her possession for more than a year prior to her death. That document gave her the power to carry out the desires expressed in her letter. It would seem that she thus acquiesced in the provisions of the trust as created and approved the method therein given her of carrying out her desires concerning the estates of her children.

The declaration of trust is clear in its terms and free from uncertainty and ambiguity in its designation of Mrs. Wood as the beneficiary. That being so, there is no room for judicial interpretation and no opportunity for a court to substitute unnamed beneficiaries for a named beneficiary. (Secs. 2221, 2222, Civ. Code; *Colver* v. *Scarborough Co.*, 73 Cal. App. 421 [238 Pac. 1096].) We therefore conclude that Mrs. Wood was the sole beneficiary of the trust of which Bess Brooks was the trustee.

There is nothing in our former opinion (125 Cal. App. 248 [14 Pac. (2d) 110]), necessary to that decision, which conflicts with the views just expressed. A discussion of the question of the beneficiaries was not necessary to support the final conclusion there reached that a judgment in favor of the bank be reversed on the ground that the bank had notice that Bess Brooks held legal title to the property in trust without the power of conveyance except on direction of Mrs. Wood and upon the further ground that the evidence did not support a finding to the effect that all of the $2,200 borrowed by the trustee from the bank had been used to preserve the property of the trust estate and pay the bills and expenses of Mrs. Wood.

■ Having reached the conclusion that Mrs. Wood was the sole beneficiary of the trust we must next turn to the consideration of the question of the right of plaintiffs to sue the bank and obtain a money judgment against it without any probate of the estate of Mrs. Wood and simply as her heirs at law and not as beneficiaries of the trust.

In considering the appeal of Chester G. Wood, husband of Mrs. Wood during her lifetime, it should be sufficient to say that on April 6, 1926, after the death of his wife, he conveyed his interest in the trust property to Bess Brooks. He, therefore, has no remaining interest in it. While he was awarded nothing against the bank the judgment fails to take into consideration the effect of this transfer.

Section 1452 of the Code of Civil Procedure, in effect at the time this action was instituted (now section 581 of the Probate Code), provided in part as follows:

"The executor or administrator is entitled to the possession of all the real and personal estate of the decedent, and to receive the rents and profits of the real estate until the estate is settled or until delivered over by the order of the

court to the heirs or devisees; and must keep in good tenantable repair all houses, buildings and fixtures thereon which are under his control. . . . The heirs or devisees may themselves, or jointly with the executor or administrator, maintain an action for the possession of the real estate, or for the purpose of quieting title to the same, against any one except the executor or administrator; but this section shall not be so construed as requiring them so to do.''

■ It seems to be the settled law of California that an heir at law, prior to distribution of his ancestor's estate, cannot sue to obtain a money judgment on behalf of the estate, nor can he maintain any action concerning estate property except to regain possession of or quiet title to real estate. In *Robertson* v. *Burrell,* 110 Cal. 568 [42 Pac. 1086], it is said:

''Plaintiffs are not the proper parties to maintain this action, and they have not legal capacity to do so. While, in a sense, they are beneficiaries of the trust which resulted by the death of their father, the fulfillment of which was imposed upon the surviving partner, yet there were certain intermediate steps and processes necessary to be taken and followed before their beneficial interests could be reduced to possession. And it is these necessary processes which the action under consideration entirely ignores. For there was another trust intervening in time and right and duties between the close of the surviving partner's trust and their enjoyment of its fruits. It is true that as heirs of their father the title to his property, real or personal, vested in them, but their title did not carry with it the right of immediate enjoyment. The rights and duties of the administrator of their father's estate interposed and intervened. The administrator, also, is a trustee with well-defined duties, among the first of which is that of collecting the assets of the estate and paying its just debts after due notice to creditors. The heirs' title is subject to the performance by the administrator of all his trusts, and they finally come into the possession and enjoyment of only such portion of the estate as may remain after the execution of them by the administrator. . . .

''Nor can the heir, by any act of his own, strip the representative of any of his rights, nor relieve him from the performance of any of his duties. The heir may sell his interest, but the administrator still has control of the property

sold for the payment of debts and the general purposes of administration. The heir cannot bring an action to enforce payments or collect debts (*Harwood* v. *Marye,* 8 Cal. 580; *Grattan* v. *Wiggins,* 23 Cal. 16, 29); and, even when he attempts to do so by suing in his individual capacity and as executor, the right of action not being in both, but in the executor alone, a demurrer will be sustained. (*Dias* v. *Phillips,* 59 Cal. 293.)'' See, also, *Miller* v. *Ash,* 156 Cal. 544 [105 Pac. 600]; *Spencer* v. *Continental Cas. Co.,* 16 Cal. App. (2d) 176 [60 Pac. (2d) 339].

It follows from all that has been said that the Wood children lack the legal capacity to sue and that the right, if any, to maintain this action, which is neither to recover possession of nor to quiet title to real property, rests in an administrator of the estate of Mrs. Wood.

It is conceded that the judgment in favor of the intervener, Ira B. Sweatman, is proper and that it must be affirmed.

The judgment in favor of the intervener is affirmed. The balance of the judgment is reversed. Each party will pay his own costs of appeal.

Barnard, P. J., and Jennings, J., concurred.