[Civ. No. 26871. First Dist., Div. One. Sept. 1, 1970.]

CHARLES REAGH, as Administrator, etc., Plaintiff and Appellant, v. LUCINDA KELLEY et al., Defendants and Respondents.

1084

## COUNSEL

Mack & James, Robert H. James and Julian W. Mack II for Plaintiff and Appellant.

William Muller, in pro. per., Fred H. Kraft and James McWilliams for Defendants and Respondents.

## OPINION

**MOLINARI, P. J.** — Plaintiff, as administrator of the estate of Bessie Muller, deceased, appeals from a judgment in favor of defendants in cross-actions to quiet title in which it was adjudicated that plaintiff had no right, title, or interest in the real property which was the subject of said actions; that defendant Lucinda Kelley (hereinafter referred to as "Kelley") held

title to said real property as trustee under a valid trust, and that defendant William Muller (hereinafter referred to as "Muller") had a right, title and interest as a beneficiary of said trust. This appeal comes to us on a settled statement pursuant to rule 7 of the California Rules of Court and two exhibits, to wit, plaintiff's exhibit 3 and defendants' exhibit M.

## The Facts

Bessie Muller (hereinafter referred to as "decedent"), mother of Muller, died intestate on June 14, 1956. On October 21, 1963, plaintiff was appointed administrator of her estate. Muller is her sole surviving heir. A document entitled "Declaration of Trust" (exhibit M) (hereinafter referred to as the "Declaration") was drafted by Muller, signed by Muller and Kelley, and, a few days before June 1, 1956, was delivered by Muller and Kelley to decedent. Both Muller and Kelley had discussed the contents of the Declaration with decedent. On June 1, 1956, a document entitled "Grant Deed (Individual)" (exhibit 3) (hereinafter referred to as the "Deed"), also drafted by Muller, and purporting to convey the subject real property, was executed and delivered by decedent to Kelley and Muller. At the time decedent executed the Deed she had the Declaration in her possession, but did not execute the Declaration. The Deed was recorded on November 16, 1962, but the Declaration was never recorded. From the date of the execution and delivery of the Deed, Kelley and Muller claimed ownership and the right to possession of the property under the terms of the Deed and the Declaration and have paid all taxes thereon. Decedent lived on the property until she was hospitalized with a terminal illness on June 4, 1956, and Muller, who resided with decedent, has continued to reside on the subject property. No accounting has been rendered by Kelley or Muller concerning the affairs of the purported trust.

## The Deed

The subject deed provides that Bessie Muller "Grants to LUCINDA KELLEY, Trustee for CHAJA LEVINA, et cetera, subject however, to the conditions and provisions hereinbelow set forth or noted" the subject real property:

"*Subject to,* HOWEVER, that said LUCINDA KELLEY, Trustee for CHAJA LEVINA and other cognated relations, but not my son, William Muller, and excluding him, shall be bound, controlled and regulated by my son, William Muller, in carrying out this trust, and that this trust shall be carried out by aforesaid trustee or her substitutes per the oral instructions of my son, William Muller, to said trustee or her substitutes, as I have orally instructed my son, William Muller, in accordance with my wishes.

"*Subject Further*, HOWEVER, that the exclusive possession of the said described property herein is reserved unto my son, William Muller, and excepted from this grant or conveyance, and said possession is to remain in my son, William Muller, until final disposition of this trust, and that the said possession aforementioned is to be disposed of as per my oral instructions to my son, William Muller, which instructions are to be communicated to said trustee or her substitutes, until disposition of this trust."

## The Declaration

The Declaration, following Kelley's signature thereon, has appended to it a declaration signed by Muller wherein he states, in essence, that the preceding declaration reflects and represents the instructions, directions, desires, and wishes of decedent which she gave him orally and to which oral instructions reference is made in the deed dated June 1, 1956, executed by decedent, and delivered by her to Kelly as trustee.

The Declaration states that decedent has conveyed to trustee Kelley certain described real property to hold in trust for certain enumerated beneficiaries. The real property described is the same as that described in the Deed. The enumerated beneficiaries are Muller, certain named nieces and nephews, the husband and children of niece Chaja Levina, and any relatives of decedent, to the third degree, "found living on the Continents of Europe, Asia and Africa within 20 years of the creation of this trust." The Declaration provides further that if the beneficiaries designated as "relatives" of decedent are not found within such 20-year period, those that are not found are to be excluded from the benefits of the trust and the trust is to terminate as to any such beneficiary who has not been found within this period. The Declaration then contains provisions purporting to set out the terms, conditions, and purposes of the trust to which we shall hereinafter allude in more detail.

## Statement of the Case

The trial court determined that decedent created a valid *inter vivos* trust by force of the two instruments. Plaintiff asserts that neither of the instruments was effective to create a valid trust and that, therefore, the title to the subject real property remained in decedent's estate. ■ In considering this contention we observe here that the only factual issues tendered to the court below were those surrounding the execution of the two instruments as we have detailed in the statement of facts. No extrinsic evidence was offered or presented as to the meaning of either of the two instruments. Accordingly, the construction and interpretation of the instruments is a question of law. (*Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825]; *Meyer* v. *State Board of Equalization*, 42 Cal.2d 376, 381 [267 P.2d 257]; *Parsons*

v. *Bristol Development Co.*, 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) We are, therefore, not necessarily bound by the interpretation made by the trial court. (*Estate of Platt, supra; Parsons* v. *Bristol Development Co., supra,* at pp. 865-866.)

### Essentials of an Express Trust

■ In order to constitute a valid trust there must be a competent trustor, an intention on the part of the trustor to create a trust, a trustee, an estate conveyed to the trustee, an acceptance of the trust by the trustee, a beneficiary, a legal purpose, and legal terms. (See Civ. Code, §§ 2216, 2218, 2219, 2221 and 2222;[1] see *Estate of Johnston,* 47 Cal.2d 265, 270 [303 P.2d 1]; *In re Walkerly,* 108 Cal. 627, 650 [41 P. 772]; see *Hausfelder* v. *Security-First Nat. Bank,* 77 Cal.App.2d 478, 484 [176 P.2d 84]; *Williams* v. *Miranda,* 159 Cal.App.2d 143, 152 [323 P.2d 794].) "The nature, extent, and object of a trust are expressed in the declaration of trust." (§ 2253.) Such declaration must be reasonably certain in its terms. (*Burling* v. *Newlands,* 112 Cal. 476, 484 [44 P. 810].) ■ Accordingly, as to the trustor and the beneficiary, a voluntary trust is created "by any words of the trustor, indicating with reasonable certainty: (1) An intention on the part of the trustor to create a trust; and (2) The subject, purpose and beneficiary of the trust" (see *Lefrooth* v. *Prentice,* 202 Cal. 215, 226 [215 P. 947]); and as to the trustee, such a trust is created by any words or acts of his indicating with reasonable certainty: 1. His acceptance of the trust, or his acknowledgment, made upon a sufficient consideration, of its existence; and 2. The subject, purpose and beneficiary of the trust. (See *Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474, 482 [111 P. 360].)

In determining whether the language employed in the instrument is too vague and uncertain to create a valid trust, the statutory declarations of sections 2221 and 2222 are to be applied in conjunction with the principle that "The declaration of trust . . . must be reasonably certain in its material terms; and this requisite of certainty includes the subject-matter or property embraced within the trust, the beneficiaries or persons in whose behalf it is created, the nature and quantity of interests which they are to have, and the manner in which the trust is to be performed." (Pomeroy, Equity Jurisprudence (4th ed.) § 1009; *Wittfield* v. *Forster,* 124 Cal. 418, 421 [57 P. 219]; *Lefrooth* v. *Prentice, supra,* 202 Cal. 215, 227-228.)

■ In addition to the foregoing requirements, a voluntary express trust with respect to real property can only be created or declared in California by virtue of the provisions of section 852[2] and Code of Civil Procedure

---

[1]Unless otherwise indicated, all statutory references are to the Civil Code.

[2]Civil Code section 852 in pertinent part, provides: "No trust in relation to real property is valid unless created or declared: 1. By a written instrument, subscribed

section 1971[3] by a written instrument subscribed by the trustor *or* trustee. (See *Doran* v. *Doran,* 99 Cal. 311, 314 [33 P. 929]; *Smith* v. *Mason,* 122 Cal. 426, 427 [55 P. 143]; 48 Cal.Jur.2d, Trusts, § 31.) It is not necessary, however, that all of the conditions and terms of a trust in real property be expressed in a single paper. (*Root* v. *Kuhn,* 51 Cal.App. 600, 604 [197 P. 150]; *Weiner* v. *Mullaney,* 59 Cal.App.2d 620, 631 [140 P.2d 704]; *Wood* v. *American Nat. Bank,* 24 Cal.App.2d 313, 318 [74 P.2d 1051]; *Coyle* v. *Coyle,* 212 Cal. 715, 717-718 [300 P. 5]; *Garnsey* v. *Gothard,* 90 Cal. 603, 607-608 [27 P. 516]; *Hillman* v. *Stults,* 263 Cal.App.2d 848, 868 [70 Cal. Rptr. 295]; Rest.2d Trusts, § 42, com. f, p. 109; 4 Witkin, Summary of Cal. Law (1960) Trusts, § 7, p. 2891.)

In the instant case no contention is made that decedent was not a competent trustor, or that she did not intend to create a trust; nor is any claim made that the purported trust fails for a lack of a trustee, or the conveyance of an estate to the trustee or because the trustee did not accept the trust. The attack upon the purported trust is predicated upon alleged uncertainties in the Deed and Declaration; upon the assertion that these instruments violate the rule against perpetuities; that the Deed is void because it restrains alienation; that the Declaration violates the statute of frauds; that the Deed attempts to make an oral trust of real propery; and that the Declaration is totally inconsistent with the Deed.

### The Statute of Frauds

██ We first proceed to consider the claim with respect to the statute of frauds. We first observe that no contention is made that the Deed does not satisfy the statute of frauds. The attack upon the Declaration is apparently based on the contention that it violates the statute because it is not signed by decedent and because it is a separate instrument from the Deed by which decedent purported to create the trust. In essence plaintiff argues that the Declaration cannot be used to cure the alleged defects in the Deed.

In considering these contentions we first observe that it is not necessary that the declaration of trust be signed by the trustor, but it may be signed only by the trustee. (§ 852.) With respect to trusts in real property, the essence of the requirement of the statute of frauds is that the declaration of

---

by the trustee, or by his agent thereto authorized by writing; 2. By the instrument under which the trustee claims the estate affected; . . ."

[3]Code of Civil Procedure section 1971, in pertinent part, provides: "No estate or interest in real property, . . . nor any trust or power over or concerning it, or in any manner relating thereto, can be created, granted, assigned, surrendered, or declared, otherwise than by operation of law, or a conveyance or other instrument in writing, subscribed by the party creating, granting, assigning, surrendering, or declaring the same, or by his lawful agent thereto authorized by writing."

trust be in writing and that it be signed by the party who is by law enabled to declare the trust. (§ 852; Code Civ. Proc., § 1971; Rest.2d Trusts, *supra,* § 42, p. 108.) To satisfy the statute of frauds, therefore, the memorandum must be signed by the transferor, as a person enabled by law to declare a trust, prior to or at the time of the transfer; and it may be signed by the transferee, as a person enabled to declare the trust, prior to or at the time of the transfer or subsequently. (Rest.2d Trusts, *supra,* § 42, pp. 108-109; see *Hillman* v. *Stults, supra,* 263 Cal.App.2d 848, 869.)

In the present case both the Deed and the Declaration are in writing. The Deed is signed by decedent and the Declaration is signed by Kelley. The trial court found on substantial evidence that the Declaration signed by Kelley was delivered by her to decedent a few days prior to June 1, 1956; that on June 1, 1956 decedent executed the Deed; and that on the same day decedent delivered the Deed and the Declaration to Kelley. Accordingly, both the Deed and the Declaration were signed before the transfer of the property. Therefore, insofar as the requirements of the statute of frauds are concerned, they were satisfied in the instant case.

### *Uncertainty*

Plaintiff contends that the Deed is uncertain in its material terms because it cannot be ascertained therefrom which relatives are to receive from the trust or the degree into which each is to receive. He also argues that the Deed is uncertain because it merely states that the trustee is to carry out the directions of Muller without any designation as to what would occur if Muller died or became insane or if the trustee refused to carry out his instructions. With respect to the Declaration, plaintiff merely asserts that it is ambiguous and uncertain in its terms without pointing out how or in what respect it is uncertain and ambiguous. Plaintiff merely invites us to read the 56-page Declaration with the assurance that we will agree with him. We are entitled to decline this invitation since it is incumbent upon plaintiff to point out error. (See rule 15(a), Cal. Rules of Court; see also *Fox* v. *Erickson,* 99 Cal.App.2d 740, 742 [222 P.2d 452]; *Utz* v. *Aureguy,* 109 Cal. App.2d 803, 807 [241 P.2d 639]; *Du Zeff's Hollywood, Inc.* v. *Wald,* 235 Cal.App.2d 678, 682 [45 Cal.Rptr. 584]; *Haynes* v. *Gwynn,* 248 Cal.App. 2d 149, 151 [56 Cal.Rptr. 82].) We shall, nevertheless, discuss the claim of uncertainty with respect to the Declaration because this claim is interwoven with the contention that there is no valid trust because the Declaration is totally inconsistent with the Deed. ■ In sum, we shall consider whether each of the two instruments standing alone constitutes a valid trust or whether a valid trust exists by virtue of the two instruments considered together.

 Adverting to the Deed, we conclude that it does not, in and of itself, constitute a valid trust, but not entirely for the reason advanced by plaintiff whose claim of uncertainty rests essentially upon the alleged failure to designate beneficiaries. It is, of course, essential that in order to create a valid trust there must be a beneficiary definitely ascertained at the time of the creation of the trust or definitely ascertainable within the period of the rule against perpetuities. (Rest.2d Trusts, § 112, p. 43; *Fay v. Howe*, 136 Cal. 599, 601 [69 P. 423]; *Estate of Reith*, 144 Cal. 314, 318 [77 P. 942].) Under this rule the members of a definite class of persons can be the beneficiaries of a trust. (Rest.2d Trusts, § 120, p. 253.) However, the identity of all the individuals comprising the membership of the class must be ascertainable in order to satisfy the requirement of definiteness. (Rest.2d Trusts, *supra.*)

The Deed recites that Kelley is trustee for Chaja Levina and other "cognated relations." Levina is clearly an ascertainable person. With respect to the designation "cognated relations" we note that the adjective "cognate" is defined by Webster as "related by blood": "kindred by birth" and "related on the mother's side" (Webster's Third New Internat. Dict.), and that Black defines "cognates" as "Relations by the mother's side, or by females." (Black's Law Dict. (4th ed.).) The term "cognated relations" has reference, therefore, to certain relatives of decedent.

 When a trust is created for the benefit of "relatives" a trust does not fail in this state on the ground that the class is indefinite.[4] The words "relatives" or "relations" when used in a devise or bequest are construed to mean, unless a contrary intention appears, those next of kin who in cases of intestacy would take under the statutes of distribution. (*Estate of Trickett*, 197 Cal. 20, 25 [239 P. 406]; see *Estate of Sowash*, 62 Cal.App. 512, 516 [217 P. 123].) In the present case, insofar as the language of the Deed is concerned, the designation "cognated relations" refers to a definite group whose members are ascertainable since the term can be construed to mean those persons living at the time of the subject conveyance who were related by blood to the decedent and who, in the case of intestacy, would have taken under the laws of intestacy had they survived her. (See *Estate of Sowash*, *supra.*)

The Deed, however, does not suffice as a declaration of trust because the nature and quantity of the interests the beneficiaries are to have, the dura-

---

[4]We note that section 121 of the Restatement Second of Trusts states that a trust for one's "relatives" is certain and definite *only* if the trustee is given the power to choose among the relatives. The Restatement acknowledges, however, that the term "relatives" may under the circumstances be construed to mean "such relatives as constitute the person's immediate family, or some other definite group." (Rest.2d Trusts, § 121, p. 255.)

tion of the estate attempted to be granted to the trustee, and the manner in which the trust is to be performed, are all left undeclared. In sum, no trust purpose is stated. The Deed merely conveys title and leaves all else to the oral instructions of Muller. The oral instructions do not supply the deficiencies in the Deed as a trust declaration because, since the purported trust involves real property, the statute of frauds precludes an otherwise incomplete trust instrument from being completed by oral instructions. (*Estate of Gaines,* 15 Cal.2d 255, 262-263 [100 P.2d 1055]; *Briggs* v. *Nilson,* 226 Cal.App.2d 342, 345 [38 Cal.Rptr. 68]; *Jose* v. *Pacific Tile & Porcelain Co.,* 251 Cal. App.2d 141, 143 [58 Cal.Rptr. 880].)

We now turn to the Declaration to ascertain whether it creates a valid trust. We first observe that the Declaration clearly designates the trustee and that it clearly identifies and describes the subject real property as the subject of the trust. The Declaration also clearly sets out that the trustee accepts the trust for the benefit of the beneficiaries described in the Declaration and acknowledges that the subject property has been conveyed to her by a deed absolute executed and delivered on June 1, 1956. With respect to the requirement that a declaration of trust must designate the beneficiaries with reasonable certainty, we observe that it first designates certain beneficiaries who are specifically named or designated and then designates "any relatives" of decedent "to the third degree" found living on the continents of Europe, Asia and Africa within 20 years of the creation of the trust.

The word "relative" is ordinarily defined by Webster to mean "a person connected with another by blood or affinity; *esp:* one allied by blood." (Webster's Third New Internat. Dict.; see *Estate of Trickett,* supra, 197 Cal. 20, 25.) The words "to the third degree" which limit the word "relatives" have obvious reference to relatives to the third degree of consanguinity. In the law of descent and family relations the term "degree" means the distance, or number of removes, which separates two persons who are related by consanguinity. (Black's Law Dict. (4th ed.); *Calvert* v. *Beck,* 240 Ala. 442 [199 So. 846, 847]; see Prob. Code, §§ 252, 253.) Accordingly, the term "relatives . . . to the third degree" has reference to an ascertainable class of persons, that is, relatives of decedent within the third degree of consanguinity.

We now turn to the question whether the Declaration contains the essentials of trust purpose, duration of the trust estate, the quantity and interests of the beneficiaries, and the manner in which the trust is to be performed. The subject Declaration consisting of 54 pages, excluding the appended declaration by Muller, although replete with verbosity, ambiguous in several respects, and inartfully drawn, nevertheless clearly discloses that

its primary purpose is to create a spendthrift trust for Muller. The Declaration also states that the trust has for its purposes the provision of a place of abode for the beneficiaries of the trust when they visit San Francisco. Although other purposes are stated, these are vague and appear to deal with the disposition of the trust res in the event Muller dies without issue. Notwithstanding this ambiguity, two trust purposes are specifically stated.

Adverting to the duration of the purported trust, we observe that it provides essentially that it is to exist for a period of 25 years from its creation, that under certain contingencies it may be sooner terminated, that it may continue after 20 years, but that in no event is it to continue beyond 21 years after the death of the last survivor of the designated beneficiaries. With respect to the quantity and interests of the beneficiaries, the entire quantity of the estate is set aside for the spendthrift trust in favor of Muller for at least 25 years or until Muller's demise, and the interests of the other beneficiaries during the existence of the trusts are apparently limited to their right to reside on the real property when they are in San Francisco. Upon the termination of the trust, provision is made for distribution to remaindermen in specific interests in accordance with certain designated schemes. Finally, as to the manner in which the trust is to be performed, the Declaration delineates in great detail the powers and discretion vested in the trustee regarding the administration, management, and investment of the trust res and the distribution and payment of the trust income to Muller.

In view of the foregoing we conclude that the Declaration suffices to create a trust which binds the trustee since it contains with reasonable certainty all the elements required by section 2222 and the requirements of certainty as to its material terms. We thus have the creation of a trust with Kelley as trustee to hold in trust for the purposes therein and stated for the benefit of the beneficiaries therein designated, the real property described in the Declaration. The Declaration, however, does not in and of itself create a valid trust, even though it contains all of the elements necessary to bind Kelley as a trustee, because it lacks an *inter vivos* transfer of the trust res to Kelley as trustee for the beneficiaries. (See Rest.2d Trust, § 17, pp. 59-60.) That deficiency, however, is satisfied by the Deed since that instrument is effective as a transfer of the property to Kelley. It is not necessary that the transfer be effected by the incorporation of the conveyancing instrument into the instrument declaring the trust, but the trust may be expressed in an instrument separate from the transfer to the trustee. (*Coyle* v. *Coyle, supra,* 212 Cal. 715, 717-718 [conveyance of land from father to son and written promise of son to reconvey]; *Wood* v. *American Nat. Bank, supra,* 24 Cal.App.2d 313, 318 [conveyance by grant deed and written instrument by grantee acknowledging trust and agreeing to convey at beneficiary's directions]; *Hillman* v. *Stults, supra,* 263 Cal.App.2d 848,

868 [deed and bill of sale to transferee and letter from transferee stating property vested in him for benefit of transferee's brother]; *Garnsey* v. *Gothard, supra,* 90 Cal. 603, 607-608 [deed absolute and verified answer in an action by grantee that property was conveyed to him in trust for certain purposes]; *Roberts* v. *Taylor,* 300 F. 257, 258-259 [absolute conveyance of realty with written agreement by grantee to manage lands and pay profits to third person].)

In view of the foregoing, we conclude that a valid trust was created by the Deed (the instrument transferring the subject real property from decedent to Kelley) and the Declaration (by which Kelley declared that she held the property in trust for the beneficiaries therein designated and for the purposes therein stated).

### *Inconsistency*

 Plaintiff contends that the Declaration is totally inconsistent with the Deed in "nearly every material respect." In considering this contention we observe that we are not confronted with two declarations of trust which we must reconcile. Here we have only one instrument that serves as a declaration of trust, i.e., the Declaration. The Deed merely serves as the instrument conveying the trust property, although, while insufficient in itself to serve as a declaration of trust because of uncertainty, it also serves as an indication of an intention to create a trust on the part of the decedent, it designates the trustee, and it designates beneficiaries. In any event, we perceive no material inconsistencies between the two instruments.

Plaintiff, although making the broad assertion of inconsistency, essentially specifies only three instances of claimed inconsistency. He first asserts that the Declaration adds to the res other real property than that described in the Deed. In considering this contention we observe, initially, that the only real property at issue is the same property particularly described in both instruments by metes and bounds. Moreover, the reference in the Declaration to other real property appears to refer to property which may become a part of the trust res upon the happening of certain contingencies which result in a sale or conversion of the subject real property, or which might be acquired from the income and profits of the trust. As already pointed out, since the terms and conditions of the trust are expressly stated in the Declaration which is not subject to any oral instructions,[5] the reference in the Deed to oral instructions is merely an expression of ineffective language which in no way limits the trust estate.

---

[5]We note here that in the addendum attached to the Declaration executed and signed by Muller he states that the Declaration states the directions, desires and wishes which decedent had orally stated to him. We also note that the contents of the declaration were discussed with decedent by Kelley and Muller.

The assertion of inconsistency on the basis that the Deed reserved no rights to decedent and that the Declaration does contain reservations in favor of decedent is without merit for the reasons already stated in our analysis of the ineffectiveness of the Deed as a declaration of trust. These same reasons also render unmeritorious the assertion that Muller's right of possession in the Deed is contradicted by the provisions in the Declaration giving Muller and decedent a concurrent right of possession.

### Rule Against Perpetuities

 Plaintiff argues that both the Deed and the Declaration violate the rule against perpetuities. He urges that the Deed is violative of the rule because the class "cognated relations," without any specification of which members thereof are to benefit, allows for an interest to vest at a time future outside the rule's statute of limitations. Plaintiff concludes that this is so since decedent will have "cognated relations" forevermore. With respect to the Declaration, the objection is that the beneficiaries selected to govern the time of vesting are so numerous or so situated that evidence of their death "is likely to be unreasonably difficult to obtain." Before considering the application of the subject rule, we again observe that the trust instrument is the Declaration, not the Deed. We are, therefore, primarily concerned with the provisions of the Declaration.

 The California rule against perpetuities is found in Civil Code section 715.2 which provides, in pertinent part, that "No interest in real . . . property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest and any period. . . ." The rule relates only to vesting rather than to the termination of an interest (*Caffroy* v. *Fremlin,* 198 Cal.App.2d 176, 181 [17 Cal.Rptr. 668]; *Fisher* v. *Parsons,* 213 Cal.App.2d 829, 841 [29 Cal.Rptr. 210]; *Estate of Micheletti,* 24 Cal.2d 904, 908 [151 P.2d 833]); and it applies both to the vesting of equitable as well as legal estates in real and personal property. (*Caffroy* v. *Fremlin, supra; Estate of Micheletti, supra.*) Moreover, the rule applies at the instrument's inception, that is, the validity of the instrument with respect to the rule is judged by looking at the possibilities at the time the instrument is executed. (*Estate of Campbell,* 28 Cal.App.2d 102, 104 [82 P.2d 22]; *Haggerty* v. *City of Oakland,* 161 Cal.App.2d 407, 418 [326 P.2d 957].) Accordingly, *all* interests must vest within the time prescribed by the rule. (*Estate of Campbell, supra; Haggerty* v. *City of Oakland, supra.*)

In 1963 the Legislature enacted section 715.8[6] which defined when an

---

[6]Civil Code section 715.8 provides, in pertinent part, as follows: "An interest in real or personal property, legal or equitable, is vested if and when there is a person

interest became "vested" within the meaning of the rule against perpetuities. It has been suggested that this enactment is a codification of existing decisional law. (See *Prime* v. *Hyne,* 260 Cal.App.2d 397, 403 [67 Cal.Rptr. 170].) In any event it is clear that with respect to instruments executed prior to the enactment of section 715.8, as is the case here, the decisions of this state, as well as those enunciative of the common law,[7] refer to the time of the commencement of an estate or interest in property. (*Estate of McCray,* 204 Cal. 399, 406 [268 P. 647]; *Dallapi* v. *Campbell,* 45 Cal.App. 2d 541, 544 [114 P.2d 646]; 4A Thompson on Real Property (1961) § 2018, p. 629; 2 Tiffany on Real Property (3d ed.) § 391, p. 151.) Accordingly, the rule is stated thusly: " 'Any limitation or provision, the purpose or possible effect of which is to *cause an estate to commence in the future,* is invalid if, as a result thereof, an estate may commence more than twenty-one years after a life or lives in being.' " (Italics added; *Estate of McCray, supra,* 204 Cal. 399, 406; *Dallapi* v. *Campbell, supra;* Tiffany, *supra.*)

In view of the foregoing it is clear that the rule against perpetuities applies only to the vesting of future estates and not to vested estates. (*Caffroy* v. *Fremlin, supra,* 198 Cal.App.2d 176, 181; *Victory Oil Co.* v. *Hancock Oil Co.,* 125 Cal.App.2d 222, 230 [270 P.2d 604]; *Fisher* v. *Parsons, supra,* 213 Cal.App.2d 829, 838; *Haggerty* v. *City of Oakland, supra,* 161 Cal.App.2d 407, 417; *Dallapi* v. *Campbell, supra,* 45 Cal.App.2d 541, 546; see 4A Thompson on Real Property, *supra,* at pp. 629-630.)

Adverting to voluntary trusts, we observe that a trust, valid at its creation, vests the legal title to real property and the whole estate therein in the trustee, subject only to the execution of the trust. (§ 863; *Crystal Pier Co.* v. *Schneider,* 40 Cal.App. 379, 381 [180 P. 948].) Insofar as the beneficiary is concerned, the trust vests in him an equitable estate or beneficial interest independent of the legal estate. (*Title Ins. & Trust Co.* v. *Duffill,* 191 Cal. 629, 647-649 [218 P. 14]; *Lowenthal* v. *Kunz,* 104 Cal.App.2d 181, 183-184 [231 P.2d 62].)

Directing our attention to the Declaration, in the light of these principles, we note that it does not provide for any intervening life estates or other prior interests preventing either the legal or the beneficial interests from vesting within the time prescribed by the rule, but the respective inter-

---

in being who could convey or there are persons in being, irrespective of the nature of their respective interests, who together could convey a fee simple title thereto. . . ."

[7]The common law rule against perpetuities is the law of this state subject to the power of regulation by the Legislature. (*Estate of Sahlender,* 89 Cal.App.2d 329, 339-340 [201 P.2d 69]; *Haggerty* v. *City of Oakland, supra,* 161 Cal.App.2d 407, 417; see Cal.Const., art. XX, § 9; Civ. Code, § 22.2.)

ests became immediately effective upon the instrument's inception. In sum, both the legal and equitable estates are vested estates.

Here it is clear that both the trustee Kelley and the other specifically named beneficiaries are ascertainable persons to whom their respective interests vested immediately upon the conveyance to the trustee by way of the Deed. As already pointed out, the "cognated relatives" of decedent "to the third degree" are persons who are members of a class who are ascertainable and who also took immediately subject to the defeasance provided in the Declaration.

We are not here concerned with persons who might be "cognated relations" at a time beyond the time allowed by the rule, but with such persons who are living and ascertainable at the time of the conveyance under the subject deed. (See Tiffany on Real Property, *supra*, § 394, at pp. 154-155; Thompson on Real Property, *supra*, § 2020, pp. 645, 646.)[8]

### Restraint of Alienation

 Plaintiff asserts that the deed instrument is violative of the rule against restraint of alienation. Such rule is codified in section 711, which provides that conditions restraining alienation, when repugnant to the interest created, are void. Plaintiff's assertion is based on the contention that Muller's power of control could be exercised so as to prohibit alienation. We observe, initially, that there is no factual or legal merit to the contention since the subject instrument does not contain a condition or covenant restraining alienation. The suggestion that Muller, because of his authority in connection with the carrying out of the trust, might attempt to restrain alienation at some future time, is not only speculative but posits a situation which, if it did occur, would not be violative of the subject rule. "The suspension of the power of alienation which is prohibited by the statute is such as arises from the terms of the instrument by which the estate is created, and not such as exists outside of that instrument . . . ." (*Estate of Pforr,* 144 Cal. 121, 127 [77 P. 825]; see *Estate of Campbell,* 149 Cal. 712, 717-718 [87 P. 573].) Here the instrument places no limitation upon either Muller or the trustee to alienate the property. As observed in *Campbell,* "When property is vested, without valid limitation to the contrary, the power of alienation goes with it as a concomitant of ownership. [Citations.]" (At p. 717.)

 Even assuming *arguendo* that it could be said that the conveyance

---

[8]We observe, here, that even considering the Deed alone, there is not a violation of the rule against perpetuities. The Deed is an ordinary conveyance of a fee to Kelley in trust for Levina and "other cognated relations" who constitute persons of a definite ascertainable class.

is accompanied by a condition or covenant proscriptive of alienation of a property interest, still that proscription element will be ignored so as to leave the interest conveyed good and unfettered. (*Wharton* v. *Mollinet,* 103 Cal.App.2d 710, 713 [229 P.2d 861]; *Hart* v. *Gould,* 119 Cal.App.2d 231, 236-238 [259 P.2d 49]; *Mountain Brow Lodge, I.O.O.F.* v. *Toscano,* 257 Cal.App.2d 22, 24 [64 Cal.Rptr. 816].) Accordingly, the entire instrument is not rendered invalid by virtue of the void restriction on the right of alienation but the void provision is separated from the title created. (*Wharton* v. *Mollinet, supra.*)

## Conclusion

In holding that a valid trust was created we are in essence determining that the Declaration, in conjunction with the Deed as a conveyancing instrument, satisfies the essentials of a valid express trust. In making this determination our consideration has been limited to the matters herein discussed having to do with the creation of a valid trust. We observe, in this regard, that the trial court specifically excluded from its findings and determination the construction, validity or effect of the trust spendthrift provisions, the destructability of the trust, and the respective rights of trustees, beneficiaries and judgment creditors. The same limitations apply to our determination.

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 18, 1970.